**STATE of Missouri, Plaintiff–Respondent,**

v.

**Patrick T. MALANEY, Defendant–Appellant.**

No. 18468.

Missouri Court of Appeals, Southern District, Division Two.

March 9, 1994.

Randell K. Wood, Wood & Associates, Larry B. Moore, Springfield, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

The trial court, after a jury-waived trial, found defendant guilty of trafficking drugs in the second degree, § 195.223,[1] RSMo Cum. Supp.1993, and he was sentenced to a term of imprisonment of 10 years. Defendant appeals.

In addition to its formal portions, the information charged that on February 11, 1991, in Greene County, the defendant "had under his control more than 30 kilograms of a mixture or substance containing marijuana, a controlled substance, and was aware of its presence and illegal nature."

On February 11, 1991, defendant was the driver and sole occupant of a Buick LeSabre four-door sedan. At approximately 3:35 p.m. the Buick was stopped by Trooper Jack McMullin on Highway I–44 in Greene County. A search by Trooper McMullin of the suitcases contained in the trunk of the vehicle disclosed the presence of 108.4 pounds of marijuana.

By a pretrial motion to suppress, renewed during the course of the trial, defendant sought to challenge the constitutionality of the initial stop of the Buick, the search of the trunk and the suitcases, the seizure of the marijuana, and statements elicited from defendant. The trial court overruled defendant's objections and received the challenged items into evidence.

Defendant's sole point is that the trial court erred in denying his motions to suppress because: (a) the challenged evidence was obtained as a result of a search subsequent to an unlawful stop, in that Trooper McMullin did not have probable cause to stop the Buick and did not intend to stop it, and (b) the evidence was obtained as a result of an unlawful search because the search was made without a warrant, without probable cause, and without defendant's consent.

At the hearing on defendant's motion to suppress, the state has the burden to show by a preponderance of the evidence that the motion to suppress should be overruled.

§ 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644[10] (Mo. banc 1992); *State v. Pate*, 859 S.W.2d 867, 870[2] (Mo.App.1993).

■ Appellate review of a ruling on a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez*, 835 S.W.2d 897, 902[9] (Mo. banc 1992). "[I]n so doing, we examine all circumstances and the total atmosphere of the case, and defer to the trial court's vantage point for assessing the credibility of the witnesses and weighing the evidence." *Id.* "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181, 183[5] (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 184.

Trooper McMullin testified at the preliminary hearing and later by deposition. At the trial, the parties stipulated that if McMullin were called to testify he would testify in the same manner. McMullin's testimony included the following:

Prior to stopping defendant I was working traffic. I observed a Buick in front of me. I saw the vehicle weave toward the center line and it would correct and then go back toward the white line, so virtually weaving. As I observed it, all of a sudden his brake lights came on and he pulled over to the shoulder. I apparently left my red lights on from the previous stop, the grille lights. He went to the shoulder so I activated my other lights and went to the shoulder with him. It was a silver Buick, a big road car, LeSabre four-door.

I stopped him to check to see what his condition was, whether it was sleep or whether he had been drinking. I based my stop on the weaving or the erratic driving.

He weaved three times. I probably observed him driving about a mile or maybe a little bit more. With regard to why defendant pulled over, in my report I explained

1.  Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

that the left knob appeared to be partially pulled out and the left knob controls two red grille lights on my patrol car, so my red lights were running. I don't know that they were because I couldn't see them—I didn't see them at the time.

One of the reasons I decided to search defendant's vehicle was he was coming from a known drug area, Oklahoma City. I–44 is considered to be a drug corridor. Other factors giving rise to my suspicion were that it was a large road car and the car did not belong to him. Also one of the first things he hit me with was he used to be a police officer. That was something that raised my suspicion because he hit me with that right off. There was no visible luggage [in the interior] for the length of stay he had been in Oklahoma. He said he had luggage in the trunk.

Under questioning by defense counsel, the following testimony was elicited:

Q. Now, you asked Mr. Malaney if you could search his car, did you not?

A. I did.

Q. What was his response?

A. He offered no objection. I mean, you know, I don't remember what his exact words were, I mean, as far as that goes, but he offered no objection.

Q. Did he say yes, no, or just didn't say anything?

A. No. He responded, but I don't remember exactly what—you know, what his wording was.

Q. So you're saying basically he assented? He just basically agreed with you that you could search it?

A. Yeah. He was—yeah, he allowed me to search, yeah.

Q. I mean, he just—he said, "Okay go ahead," or you just don't recall?

A. Like I said, I don't recall just exactly what his response was.

Q. Did he say, "No?"

A. No.

　　　·　　　·　　　·　　　·　　　·

Q. So the only reason you got in the trunk was his consent?

A. He gave me consent.

Q. And you asked him for consent because of these issues?

A. Mm-hmm.

Q. Did he ever revoke his consent to search?

A. No, he did not.

Q. How did you get in the car anyway? Did you search the interior of the car first?

A. I don't remember going through it, no, because he come back and opened the trunk.

McMullin also testified: Defendant opened the trunk for me and I looked in the trunk. I saw the two big suitcases. That was suspicious to me that there may be drugs. There were bundles of stuff in a suitcase. I picked up one of the packages to smell it. To me it was apparent what they were. Once I unzipped the suitcase and saw the packages, I placed him under arrest.

Under questioning by the prosecutor, Trooper McMullin testified:

Q. So then when you asked Mr. Malaney for permission to search his vehicle, did he in fact give you permission to search it?

A. Yes, he did.

Q. Did you specifically use the word "search" in reference to the vehicle?

A. Search the contents, yes, sir.

Q. All right. Specifically indicated the trunk?

A. Yes.

Q. What did Mr. Malaney say after you made that remark?

A. He offered no objection.

Q. All right. How did you get in the trunk?

A. He opened it with, I believe he went to the ignition, got the key and opened the trunk.

　　　·　　　·　　　·　　　·　　　·

Defendant never objected to my search. He never said anything to me after I started my search. He was right there with me

when I was searching. He was standing beside me out there with me.

■ The pretextual use of a traffic violation to justify a search is violative of the Fourth Amendment to the United States Constitution. *State v. Moody*, 443 S.W.2d 802, 804 (Mo.1969); *State v. Bunts*, 867 S.W.2d 277, 280[4] (Mo.App.1993); *State v. Lorenzo*, 743 S.W.2d 529, 532 (Mo.App.1987).

In *United States v. Hassan El*, 5 F.3d 726 (4th Cir.1993), the court considered whether the stop of a vehicle was justified and constitutional. The court said, at 730:

Several circuits have considered claims of pretext and have adopted what is often referred to as a purely objective standard. The standard relies solely on the objective facts and circumstances surrounding the stop.... Under the objective test, if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity. (Citing authorities.)

In *United States v. Cummins*, 920 F.2d 498 (8th Cir.1990), the court, citing *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978), said, at 501:

We reject the argument of Cummins and Akins that the applicable test is "not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." Only the Tenth and the Eleventh Circuits have adopted this test, and we expressly decline to join them. Instead, we align ourselves with those circuits that approach the pretextual stop or arrest question under the standard of objective reasonableness articulated by the Supreme Court. We thus agree with the conclusion expressed by the Seventh Circuit: "so long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional." [*United States v.*] *Trigg*, 878 F.2d [1037] at 1041

[(7th Cir.1989)] (relying upon [*United States v.*] *Causey*, 834 F.2d [1179] at 1184 [(5th Cir.1987)] ). (Emphasis in original; citing authorities.)

In *State v. Bunts*, 867 S.W.2d 277 (Mo. App.1993), this court said, at 280:

Our Supreme Court has held that, in determining if an arrest is in violation of the Fourth Amendment to the United States Constitution, it is appropriate to make an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and the officer's motives or state of mind are irrelevant and not subject to inquiry. *State v. Mease*, 842 S.W.2d 98, 105–106 (Mo. banc 1992); *See also State v. Huckin*, 847 S.W.2d 951, 954 (Mo.App.1993); *State v. Childress*, 828 S.W.2d 935, 945 (Mo.App. 1992). A traffic stop may be justified by observation of conduct which may not itself even constitute a traffic violation but merely an unusual operation. *State v. Huckin*, 847 S.W.2d at 955; *Wallace v. Director of Revenue*, 754 S.W.2d 900, 902 (Mo.App. 1988).

■ "Weaving within the lane of traffic in which a vehicle is traveling provides a sufficient basis for an investigatory stop of a motor vehicle." *People v. Loucks*, 135 Ill. App.3d 530, 90 Ill.Dec. 286, 287, 481 N.E.2d 1086, 1087[1] (1985). To similar effect see *United States v. French*, 974 F.2d 687, 691[2] (6th Cir.1992); *United States v. Pino*, 855 F.2d 357, 361 (6th Cir.1988); *People v. Diaz*, 247 Ill.App.3d 625, 187 Ill.Dec. 391, 394, 617 N.E.2d 848, 851[6] (1993); *State v. Gedeon*, 81 Ohio App.3d 617, 972–73, 611 N.E.2d 972, 973[3] (1992). *But cf. Salter v. North Dakota Dept. of Transp.*, 505 N.W.2d 111, 113[5] (N.D.1993) ("slight" weaving within single lane is not so erratic as to create a reasonable and articulable suspicion of a traffic violation and does not serve as a valid basis for a vehicle stop).

■ The erratic movements of the Buick justified the making of a stop by Trooper McMullin. The fact that defendant may have stopped in response to the red grille lights on the patrol car which had been left on unintentionally does not affect that justifi-

cation. There was evidence from which the trial court could find that the stop was not a pretextual stop made for the purpose of conducting a search of the vehicle. Viewed objectively, the movements of the Buick could lead a reasonable officer to believe that the driver was drunk, asleep, or for some reason inattentive. Although the grille lights may have caused defendant to stop a bit sooner than McMullin would have stopped him, the stop was not unlawful.

Defendant makes no claim that the stop involved an unnecessarily long detention before the trooper requested permission to search.

"A consent search is a recognized exception to the requirements of probable cause and a search warrant." *State v. Melville*, 864 S.W.2d 452, 454[4] (Mo.App.1993).

In *State v. Hyland*, 840 S.W.2d 219, 221–222 (Mo. banc 1992), the court said:

"The Fourth Amendment ... merely proscribes those [searches] which are unreasonable.... Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).

.     .     .     .     .

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at ——, 111 S.Ct. at 1803–4.

■ This court holds that the evidence was sufficient to support the finding of the trial court that Trooper McMullin's search of the trunk and the suitcases was with defendant's consent. Defendant's point has no merit.

The judgment is affirmed.

CROW and GARRISON, JJ., concur.