STATE of Missouri, Plaintiff–
Respondent,

v.

Veronica MENDOZA, Defendant–
Appellant.

No. 24191.

Missouri Court of Appeals,
Southern District,
Division Two.

May 3, 2002.

Petition for Rehearing and Transfer
Denied May 16, 2002.

Application for Transfer Denied
June 25, 2002.

H. Mark Preyer, of Kennett, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Dora A. Fichter, Assistant Attorney General, Jefferson City, for Respondent.

JAMES K. PREWITT, Judge.

Veronica Mendoza appeals from a judgment of the Circuit Court of Dunklin County finding her guilty of one count of possession of a controlled substance in excess of 35 grams in violation of § 195.202, RSMo, and one count of trafficking drugs in the first degree in violation of § 195.222, RSMo. She was sentenced to four years' imprisonment for the conviction for possession of a controlled substance, and ten years' imprisonment for the conviction of trafficking drugs, with the sentences to run concurrently. Mendoza claims that the trial court erred in denying her motion to suppress evidence obtained during and/or subsequent to a routine traffic stop, arguing that the stop was pretextual and amounted to profiling by the officer. Finding that the officer lacked probable cause to stop Mendoza's vehicle, we reverse the decision of the circuit court.

## Facts

Veronica Mendoza and her friend, Louis Arevalo, were driving on Interstate 55 in southeast Missouri on January 5, 2000, when, at about 8:35 p.m., they were stopped by a sergeant for the Missouri Highway Patrol, Jeffrey L. Heath. Heath had been parked on the shoulder of the interstate near the 10–mile marker in Pemiscot County, with his headlights shining onto the northbound lanes and his

radar activated. There was little traffic that evening.

Heath observed the car driven by Arevalo, a red Chevrolet Cavalier with California plates, traveling in the passing lane although there was no vehicle in the right lane. As the vehicle drove past the officer, its driver's-side tires ran onto the yellow line of the shoulder. The car returned to the right lane after passing Heath's patrol car. Heath pulled into the right lane behind the car, and stopped it after about two miles.

Heath's investigation led to a search for drugs conducted by Ado, a German Shepard trained to recognize the odor of various drugs and to "alert" to their presence by scratching or barking. Sergeant Sanders had brought Ado to the scene in response to Heath's request. Ado indicated that there were drugs in the backseat of the vehicle. The officers found a duffel bag in the backseat that contained marijuana. Two additional bags containing marijuana were found in the vehicle's trunk. A total of 111 pounds of marijuana were recovered from the vehicle.

The state charged Mendoza with possession of more than thirty-five grams of marijuana and drug trafficking. At a suppression hearing, Heath, Sanders, and Cooper, an officer who interviewed Arevalo at the police station, testified, as did Mendoza. The judge overruled the motion to suppress. Mendoza waived her right to a jury trial and agreed that the case be submitted upon the evidence presented at the suppression hearing, a lab report, and photographs submitted by the state. The court found Mendoza guilty on both counts and sentenced her to concurrent terms of four years' imprisonment for possession and ten years' imprisonment for drug trafficking. This appeal follows.

## Discussion

Mendoza raises four points on appeal. Because we think Mendoza's first point merits reversal, we need not consider her remaining points.

In her first point, Mendoza claims that the trial court erred in denying her motion to suppress "because the traffic stop was pretextual in that Sergeant Heath did not establish probable cause to believe that the motor vehicle in which Mendoza was a passenger had committed a traffic violation and this stop clearly mimicked other stops made by Sergeant Heath of out-of-state Hispanics."

■■■ A motion to suppress evidence is interlocutory only and preserves nothing for appellate review. *State v. LaFlamme*, 869 S.W.2d 183, 186 (Mo.App.1993). Normally, when the court has denied a motion to suppress, the party objecting to the admission of the evidence must raise that objection when the evidence is presented at trial in order to preserve the issue. *Id.* Here, the parties agreed that the testimony received at the hearing on the motion to suppress, during which adequate objections were made, be admitted at trial. By carrying the motion to suppress forward, defense counsel sought to preserve the issue for appellate review in the same manner as an objection to the evidence at trial. We find this method of preservation, while not ideal, adequate to review the legality of the search on the merits. *See id.*

■■■ In reviewing the merits of a motion to suppress, the facts are viewed in the light most favorable to the order challenged on appeal. *State v. Rodriguez*, 877 S.W.2d 106, 110 (Mo.banc 1994); *State v. Riddle*, 843 S.W.2d 385, 386 (Mo.App. 1992). The appellate court reviews the trial court's decision to determine if that decision is supported by sufficient evi-

dence, reversing the trial court's ruling only if it is clearly erroneous. *State v. Slavin,* 944 S.W.2d 314, 317 (Mo.App. 1997); *State v. Logan,* 914 S.W.2d 806, 808 (Mo.App.1995). We defer to the trial court's determination regarding the weight of the evidence and the credibility of the witnesses. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo.banc 1990). Whether the Fourth Amendment has been violated is a legal question which this court reviews de novo. *Slavin,* 944 S.W.2d at 317.

■ The pretextual use of a traffic violation to justify a search violates the prohibition against unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution. *State v. Mease,* 842 S.W.2d 98, 105 (Mo. banc 1992). It is enforced against the states through the due process clause of the Fourteenth Amendment. *State v. Witherspoon,* 460 S.W.2d 281, 283–84 (Mo. 1970). In determining whether an arrest or traffic stop is pretextual, the court determines whether the officer's actions were objectively authorized and legally permitted. *State v. Poindexter,* 941 S.W.2d 533, 536 (Mo.App.1997); *Mease,* 842 S.W.2d at 105–06. The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer. *Arkansas v. Sullivan,* 532 U.S. 769, 771–72, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001); *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren,* 517 U.S. at 809, 116 S.Ct. 1769.[1]

■ Sergeant Heath testified that he observed the vehicle driven by Arevalo and in which Mendoza was a passenger traveling in the passing lane without passing anyone and driving onto the yellow line of the left shoulder. According to Heath's testimony, his belief that there was an alleged violation centered only on the car traveling in the passing lane. He said that the car was driven onto but not over the left yellow line and that the car was not being operated in an unsafe manner.

There were no other cars going northbound at the time Heath pulled over Arevalo and Mendoza. That a vehicle should be driven in the right-hand lane "except when overtaking and passing another vehicle or when preparing to make a proper left turn" is proscribed in § 304.015.6, RSMo 2000. The statute does not specify whether a car must be passing another moving vehicle to fall within its exception.

■ "A police officer is authorized to stop a vehicle observed violating the traffic laws of the state." *Slavin,* 944 S.W.2d at 317. A traffic stop also may be justified " 'by observation of conduct which may not itself constitute a traffic violation but merely an unusual operation.' " *State v. Malaney,* 871 S.W.2d 634, 637 (Mo.App.

---

1. Thus, if the officer *could* have made the stop, whether a reasonable officer *would* have done the same is irrelevant. *See United States v. Botero–Ospina,* 71 F.3d 783 (10th Cir.1995) (overruling *United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988), which found that to determine if a stop was pretextual, "the proper inquiry ... is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of an invalid purpose"). *See also* Peter Shakow, *Let He Who Never Has Turned without Signaling Cast the First Stone: An Analysis of* Whren v. United States, 24 AM.J.CRIM.L. 627, § 3 (1997).(comparing the so-called "would have" and "could have" tests). The "would have" test articulated in *Guzman* has been explicitly rejected by the 8th Circuit in *United States v. Cummins,* 920 F.2d 498 (8th Cir.1990) and implicitly rejected by this District in *State v. Malaney,* 871 S.W.2d 634 (Mo.App.1994). *See Malaney,* 871 S.W.2d at 637 (citing *Cummins* ).

1994) (quoting *State v. Bunts,* 867 S.W.2d 277 (Mo.App.1993)). Thus, in *Bunts,* we found that a traffic stop was justified because the defendant abruptly dropped his speed by nearly twenty miles per hour when passing a police officer, "causing two following motorists to also reduce their speed and pass [the d]efendant to avoid the possibility of an accident." 867 S.W.2d at 279–80. In *Malaney,* we found that a traffic stop was justified because the defendant was weaving erratically within his lane of traffic. 871 S.W.2d at 635, 637–38. *Malaney* and *Bunts* sought to acknowledge an officer may have legitimate, non-pretextual reasons other than reasonable suspicion of criminal activity or violation of traffic laws to stop a vehicle that are readily apparent upon a consideration of " 'the objective facts and circumstances surrounding the stop.' " *Malaney,* 871 S.W.2d at 637 (quoting *United States v. Hassan El,* 5 F.3d 726 (4th Cir.1993)).

Mendoza claims that Arevalo moved to the left lane out of prudence when he observed the patrol officer's vehicle on the right shoulder. Once her vehicle passed the patrol car, it returned to the right-hand lane. Heath followed the vehicle in the *driving* lane for about two miles before stopping it. Thus, the situation in this case differs significantly from that in *State v. Peterson,* 964 S.W.2d 854, 856 (Mo.App. 1998), in which Sergeant Heath pulled a truck over after following it in the *passing* lane "for approximately six and one-half miles." This District found in *Peterson*

that "there was evidence from which the trial court could find that the stop by Trooper Heath was ... based upon factors which would authorize a law enforcement official to warn a motorist." *Id.* at 857. And, unlike the case in *State v. Stolzman,* 799 S.W.2d 927, 936 (Mo.App.1990), there is no allegation that Arevalo failed to signal when either moving to the left lane or returning to the right lane. Under the objective facts and circumstances surrounding the stop in this case, there was no justification for Sergeant Heath's stop.[2]

Because § 304.015.6 does not specifically proscribe Arevalo's actions, and because Arevalo's actions were not such that would justify the issuance of a warning, we find that Sergeant Heath lacked probable cause or reasonable suspicion to stop Mendoza's vehicle. Whether Heath's decision to make the stop was based on the vehicle Arevalo and Mendoza drove, the color of their skin, or the out-of-state license plate the car bore we need not and cannot decide. We reverse the trial court's conviction and order Mendoza released from state custody.[3]

GARRISON, P.J., and PARRISH, J., concur.

---

**2.** Heath acknowledged over the State's objection that "[s]ometimes cars move to the passing lane, sometimes they don't" upon seeing his patrol car positioned on the shoulder. He also agreed that in this case, driving in the passing lane did not "cause a traffic hazard in any way."

**3.** Mendoza presented evidence at trial of ten other instances in which Heath stopped a vehicle with out-of-state license plates and

driven by a Hispanic for a minor traffic violation, such as driving in a passing lane without passing or driving 5 or 6 miles over the posted speed limit, which resulted in an arrest for drug possession. Each of these arrests occurred in 1994 or 1995, five years before the arrests of Arevalo and Mendoza. Given the length of time between the incidents cited and that involving Mendoza, these incidents fail to demonstrate the "pattern" of pretextual stops

claimed by Mendoza. However, under the objective standard used by our courts in determining if a stop was pretextual, whether Heath routinely makes pretextual stops is irrelevant to our inquiry of whether he lacked justification for his stop of Mendoza.