**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Leonard BROWN, Defendant–
Appellant.**

**No. SD 30179.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 19, 2011.

Donald R. Cooley, Springfield, MO, for appellant.

Chris Koster, Attorney General, and, John M. Reeves, Assistant Attorney General, Jefferson City, MO, for respondent.

DON E. BURRELL, Judge.

Leonard Brown ("Defendant") was convicted after a bench trial of the class B felony of possessing more than five grams of marijuana with the intent to distribute it. *See* section 195.211.[1] Defendant received a five-year suspended sentence and was placed on probation. Defendant now timely appeals his conviction in a single point relied on that states:

> The [trial] court erred in overruling Defendant's motion to suppress evidence of marijuana seized pursuant to a non-consensual, warrantless search of Defendant's vehicle because said search and seizure resulted from and were premised on an unlawful stop of said vehicle for a violation of Missouri traffic law when the operation of the vehicle for [sic] merely touching the center line was not a violation of Missouri statutes.

Because the erratic operation of Defendant's vehicle provided the observing officer with sufficient grounds to stop the vehicle to check on its driver's condition,

---

1. All statutory references are to RSMo Cum. Supp.2006.

the trial court did not err in admitting the evidence acquired as a result of that stop, and we affirm Defendant's conviction.

## Factual and Procedural Background

"[W]e view the evidence presented and all reasonable inferences drawn therefrom in the light most favorable to the trial court's [ruling] and disregard all evidence and inferences to the contrary." *State v. Abeln*, 136 S.W.3d 803, 808 (Mo.App. W.D. 2004). On February 26, 2007, Defendant, who was traveling on I–44, was pulled over by Greene County Sheriff's Deputy Jason Johnson. Deputy Johnson stopped Defendant after noticing that "[Defendant]'s vehicle, a Chevy Suburban, was driving on the center line several times and weaving within [the] lane[.]" Both the front and rear tires of Defendant's vehicle made contact with the dashed center line but did not fully cross the center line and enter into the other lane. The highway was divided by a median, and no car was next to Defendant's vehicle in the adjacent lane. Deputy Johnson described Defendant's Suburban as "wandering within [the] lane" and "drifting back and forth within [the] lane[.]" Deputy Johnson was concerned that Defendant was fatigued, ill, or otherwise impaired. He also mistakenly believed that it was a violation of Missouri law to drive on the center line. After Defendant pulled over, Deputy Johnson approached the vehicle from its passenger side. Defendant was the only person in the vehicle. When Defendant rolled the window down "about a quarter of the way," the deputy "was overtaken by a very strong odor of raw marijuana."[2]

Based on a claim that the officer had no valid reason to stop Defendant's vehicle, Defendant moved to suppress any evidence that marijuana was then located in Defendant's vehicle. After conducting an evidentiary hearing and receiving written suggestions from counsel, the trial court denied the motion. After Defendant waived his right to a jury trial, the court conducted the bench trial that resulted in Defendant's conviction.

## Analysis

Defendant's point challenges only the trial court's denial of his motion to suppress; it does not challenge the actual admission of the evidence at trial. The State, citing *State v. Cain*, 287 S.W.3d 699, 704 (Mo.App. S.D.2009), urges us to reject Defendant's claim of error based on that failure. While the State correctly notes the defect, as in *Cain*, we may still exercise our discretion to review the substance of the complaint as long as the appellant objected when the evidence was introduced at trial and included the allegation of error in his motion for new trial. *Id.* The following facts are relevant to this determination.

Just before the State introduced evidence in Defendant's trial, defense counsel stated:

> [defense counsel]: We don't have an opening statement, Your Honor. Just as the Court will note from the docket entries, [Defendant] has previously hereto filed a motion to suppress. Obviously, we will be renewing and continuing our objections on the evidence with regard to that motion.
>
> [the court]: All right. Thank you. You may begin your case, then, [prosecutor].

Thereafter, each time the State sought to elicit testimony about what Deputy Johnson did and observed after approaching

---

**2.** Other observations by Deputy Johnson not relevant to Defendant's claim on appeal then gave the deputy more than sufficient probable cause to arrest Defendant for possessing, with the intent to distribute, more than 5 grams of marijuana.

Defendant's vehicle, defense counsel "renewed" his motion to suppress the evidence "on the basis of an unlawful stop[.]"

The trial court considered each of these "renewals" to be a current objection based on the grounds set forth in the motion, overruled each one, and allowed the State to present the evidence about which Defendant now complains. And although Defendant did not file a motion for new trial, no such motion was required as the case was tried to the court without a jury. Rule 29.11(e)(2).[3]

Under these circumstances, we believe it is appropriate to review Defendant's point as if it had challenged the admission of the evidence at trial.[4] *See also State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005) (review granted where the defendant had a continuing objection to the court's order denying his motion to suppress—tried as a part of defendant's bench trial—but did not also object to the admission of the underlying evidence itself).

▆▆▆ "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo." State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). The trial court's credibility determinations and findings on disputed facts are entitled to deference, and we "consider[ ] all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* "When reviewing the trial court's overruling of a motion to suppress, this [c]ourt considers the evidence presented at both the suppression hearing

and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *Pike,* 162 S.W.3d at 472.

▆▆▆ The State does not challenge Defendant's assertion that driving on the center line is not a traffic violation. The State simply argues that "whether or not [Defendant]'s actions constituted a lane violation is beside the point: [Deputy Johnson] pulled over [Defendant] not only because his tires touched the lane divider, but also because he was weaving within his lane and was concerned that [Defendant] might have been fatigued or intoxicated." Although "[a] routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment[,]" *Sund,* 215 S.W.3d at 723, "justification may [also] be based on erratic or unusual operation." *Pike,* 162 S.W.3d at 473.[5]

As noted by the State, we held in *State v. Malaney,* 871 S.W.2d 634, 637–38 (Mo. App. S.D.1994), that erratic movements within a lane are sufficient to justify an investigatory stop of a vehicle. In *Malaney,* a trooper observed "the vehicle weave toward the center line and it would correct and then go back toward the white line, so virtually weaving." *Id.* at 635. The trooper stated that during the course of about one mile, the vehicle "weaved three times." *Id.* We found that "[v]iewed objectively, the movements of the [vehicle] could lead a reasonable officer to believe that the driv-

---

3. All rule references are to Missouri Court Rules (2009).

4. Defendant's point also fails to assert that the evidence he now challenges was seized in violation of Defendant's constitutional right to be free from unreasonable searches and seizures. We choose not to dismiss Defendant's appeal on the basis of this defect because the State makes no complaint about its absence

and the claim was included in Defendant's written motion to suppress that he subsequently "renewed" at trial.

5. But in *Pike,* "the trooper could point to specific facts-the distance between the vehicles and the transgressions over the fog line-that provided a reasonable suspicion that [the defendant] had committed at least one traffic violation." *Id.*

er was drunk, asleep, or for some reason inattentive." *Id.* at 638.

In *State v. Huckin*, 847 S.W.2d 951 (Mo. App. S.D.1993), the defendant was arrested for driving while intoxicated. *Id.* at 953. He challenged the stop that resulted in his arrest on the grounds that the officer had not witnessed a traffic violation. As in the case at bar, the "[d]efendant emphasiz[ed] that although [the officer] saw defendant's vehicle 'drifting' or weaving four times, all of the drifting or weaving took place on defendant's right hand side of the road." *Id.* at 954. We found the argument had "no legal validity" and held that the officer's observations provided him with the necessary reasonable suspicion to make the stop. *Id.* at 954–55. Defendant cites *Abeln*, 136 S.W.3d at 803, and *State v. Mendoza*, 75 S.W.3d 842 (Mo. App. S.D.2002), as cases where crossing or touching a fog line provided no basis for finding that a traffic violation had occurred. These cases are easily distinguished and provide no help to Defendant.

*Abeln* involved a motion to suppress wherein the State's entire evidence consisted of a written stipulation as to what the arresting trooper's testimony would be.[6] 136 S.W.3d at 806–07. The trooper claimed he had received information that an individual wearing a Carhart coat and driving a burgundy truck had initially picked up a case of starter fluid in a local store, then put it down and purchased a single can. *Id.* at 807. The information the trooper received was that the same person had also purchased funnels and hoses at the store earlier in the week. *Id.* The trooper claimed that a short time later he recognized the defendant and his vehicle as matching the description he had been given and began following the vehicle. *Id.* He claimed he then observed the defendant drive onto the "fog line" at the shoulder of the road as the defendant appeared to open his glove box in a "furtive" manner. *Id.* The trooper ran the license plate and received information that the defendant was involved in methamphetamine and could be armed. *Id.* When the trial court suppressed the evidence, the State appealed. *Id.* On review, the Western District pointed out that even though the evidence came in by stipulation, the trial court retained the ability to assess the credibility of that testimony. *Id.* at 807–08. "Consequently, the trial court could reasonably have found that the State failed to meet its burden of proving that the stop of [the defendant's] vehicle was proper, and for that reason alone, the trial court's judgment must be affirmed." *Id.* at 810.

In *Mendoza*, the defendant was a passenger in a car traveling on a divided highway in the left lane when there were no cars traveling in the right lane. 75 S.W.3d at 843–44. The arresting trooper testified that the car touched the yellow line on the left shoulder, then returned to the right lane after passing the trooper, who was parked on the road's shoulder. *Id.* at 844–45. The trooper "pulled into the right lane behind the car[ ] and stopped it after about two miles." *Id.* at 844. The defendant argued that the car's driver acted prudently in moving to the left as he passed the trooper's vehicle, and we observed that section 304.015.6 did not "not specify whether a car must be passing another moving vehicle to fall within its exception [for overtaking and passing another vehicle.]" *Id.* at 845–46.

As noted in *Abeln*, 136 S.W.3d at 810 n. 7, our holding in *Mendoza* was that "[b]ecause § 304.015.6 does not specifically proscribe [the driver's] actions, and because

---

6. The reviewing court rejected the suggestion that the stipulation of the trooper's testimony

constituted a stipulation of facts. *Id.* at 813–14.

[the driver's] actions were not such that would justify the issuance of a warning, we [found] that [the trooper] lacked probable cause or reasonable suspicion to stop [the defendant's] vehicle." *Id.* at 846. While so holding, we also noted that "an officer may have legitimate, non-pretextual reasons other than reasonable suspicion of criminal activity or violation of traffic laws to stop a vehicle that are readily apparent...." *Id.*

■ Our Supreme Court has reaffirmed what it refers to as this legitimate "community caretaking" function of law enforcement.

> Under the Fourth Amendment, a law enforcement officer may approach a vehicle for safety reasons, or if a motorist needs assistance, so long as the officer can point to reasonable, articulable facts upon which to base his actions. This requirement meets *Terry*'s threshold—it "warrant[s] a man of reasonable caution in the belief that the action taken [is] appropriate." [*Terry v. Ohio,*] 392 U.S. [1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)].

*State v. Schroeder,* 330 S.W.3d 468, 473 (Mo. banc 2011).

Here, Deputy Johnson testified that he had "been running radar in the median at about the 64 mile marker." Because he had not detected any speed violations, Deputy Johnson began following vehicles to "check plates and [ ] driving." He followed "a small cluster of vehicles" that included Defendant's vehicle in the lead. Deputy Johnson did not observe any law violations or unusual movements by the other vehicles and eventually progressed to Defendant's Suburban, reaching it at "about the 68 mile marker." Somewhere between about the 64–mile–marker and the 68–mile–marker, Defendant not only went toward the center line, but drove on

it on two occasions and "was drifting back and forth within [the] lane[.]"

As in *Abeln,* neither party in the instant case requested findings of fact and conclusions of law. As a result, we determine whether the evidence would support any set of facts under which the trial court could have ruled as it did. 136 S.W.3d at 810. Unlike *Mendoza,* there was no vehicle on the right side of the road or shoulder to explain Defendant's move toward the passing lane. 75 S.W.3d at 845–46. Unlike *Abeln,* 136 S.W.3d at 808, but like *Malaney,* 871 S.W.2d at 637–38, and *Huckin* 847 S.W.2d at 954–55, the trial court apparently credited the deputy's testimony that he wanted to find out whether fatigue, illness or impairment accounted for Defendant's erratic driving. 136 S.W.3d at 808.

Defendant's weaving within his lane and twice driving on the center line of the highway within a four-mile stretch provided Deputy Johnson with sufficient grounds to stop Defendant's vehicle to investigate whether its driver might be impaired. *See Schroeder,* 330 S.W.3d at 473; *Malaney,* 871 S.W.2d at 637–38. As a result, the evidence admitted by the trial court was not acquired in violation of Defendant's Fourth Amendment right to be free from unreasonable seizure. Defendant's point is denied, and the judgment of conviction and sentence is affirmed.

BARNEY, P.J., and LYNCH, J., concur.