

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110766 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 2011-CR03529-01 |
| | ) | |
| PAUL W. BODENHAMER, | ) | Honorable Deborah J. Alessi |
| | ) | |
| Appellant. | ) | Filed: August 8, 2023 |

Paul W. Bodenhamer ("Defendant") appeals the judgment, following a bench trial,

finding him guilty of the class D felony of possession of a controlled substance (Count I), the

class D misdemeanor of unlawful possession of drug paraphernalia (Count II), the class B

misdemeanor of driving while intoxicated (Count III), and the class C misdemeanor of failure to

signal (Count IV). The trial court's judgment sentenced Defendant to six years of imprisonment

on Count I, fined Defendant $50 on Count II, and fined Defendant $50 on Count IV. As to

Count III, the trial court suspended imposition of sentence and placed Defendant on a period of

probation for two years.

In its respondent's brief, the State argues Defendant's entire appeal should be dismissed

on the grounds there is not a final, appealable judgment because the trial court suspended

imposition of sentence as to Count III. In his appellant's brief, Defendant raises one point on

appeal asserting the trial court erred in denying his motion to suppress and in admitting

incriminating evidence obtained as a result of a traffic stop at trial. For the reasons discussed below, we hold, (1) there is a final, appealable judgment as to Counts I, II, and IV; (2) there is not a final, appealable judgment as to Count III; and (3) the trial court did not err, plainly or otherwise, in denying Defendant's motion to suppress and admitting incriminating evidence obtained as a result of a traffic stop at trial. Accordingly, we affirm the judgment as to Counts I, II, and IV, and we dismiss the appeal as to Count III.

## I. BACKGROUND

Defendant was charged with the above crimes as a result of an incident which occurred on March 6, 2020. Defendant waived his right to a jury trial on the record, and defense counsel filed a written waiver of a jury trial.

Prior to a bench trial, Defendant filed a motion to suppress incriminating evidence obtained as a result of his traffic stop which pertained to his possession of drugs, his possession of drug paraphernalia, and his drug usage. Defendant's motion conceded the officers' initial traffic stop of his vehicle was lawful but argued the stop was "unlawfully extended when the [t]rooper conducted sobriety tests on [Defendant] without reasonable, articulable suspicion that [he] was driving while impaired."

The trial court held a suppression hearing at which Trooper Dontia Johnson testified, Sergeant Tyler Jenkins testified, and a dash cam video of the traffic stop involving Defendant (Exhibit 1) was admitted into evidence. The trial court denied Defendant's motion to suppress and immediately held a bench trial.

At trial, the State offered into evidence two exhibits: Exhibit 1 (the dash cam video that was admitted at the suppression hearing) and Exhibit 2 (the entirety of the Missouri State Highway Patrol's reports in this case). Defense counsel affirmatively stated he had no objection

2

to Exhibit 2 being received into evidence, the parties agreed the case was being submitted on the record, and the trial court admitted Exhibits 1 and 2 into evidence without objection.

## A. The Relevant Evidence Adduced at Defendant's Suppression Hearing and Trial

Viewed in the light most favorable to the trial court's denial of Defendant's motion to suppress,[1] the following relevant evidence was adduced at Defendant's suppression hearing and trial.

On March 6, 2020, at about 11:30 p.m., Trooper Johnson observed a Ford pickup truck being operated by Defendant traveling westbound on Interstate 70. Present with Trooper Johnson was Sergeant Jenkins, who is a drug recognition expert and instructor.

Trooper Johnson and Sergeant Jenkins (collectively "the Officers") both witnessed Defendant committing several traffic violations and operating his vehicle in an erratic and unusual manner. The Officers initially observed the truck change lanes without using a turn signal, which caused them to begin following the truck and activate the patrol vehicle's camera. As the Officers followed Defendant's truck, they observed it "weaving in its lane," which Trooper Johnson further described as "get[ting] close to one dotted[-]white line, and then get[ting] close to the other." Defendant's truck then made a sudden exit off the highway, before proceeding down the exit ramp at an excessive speed and straddling the line dividing two lanes. Defendant subsequently made a wide turn, drove in a left-turn lane with the left-turn signal on but without turning left, and again drove on a dotted-white line.

Trooper Johnson testified that based on his training and experience, Defendant's traffic violations were indicators Defendant was potentially intoxicated by drugs or alcohol. Similarly,

---

[1] *See State v. Loyd*, 326 S.W.3d 908, 911 (Mo. App. W.D. 2010) (where, as in this case, a defendant challenges the denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial, and we view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling) (citing *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) and *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)).

Sergeant Jenkins testified, "[t]here were some violations that were consistent with possible impairment." After Trooper Johnson activated his emergency lights to stop Defendant's truck, Defendant failed to stop at the first opportunity and ultimately pulled into the parking lot of a closed McDonalds.

Upon contact with Defendant, Trooper Johnson advised him of the reason for the stop. Trooper Johnson asked Defendant why he failed to keep his truck within its own lane, and Defendant replied, "We're not hurting anybody. Just driving here." Trooper Johnson testified Defendant's behavior was unusual in that he was "constantly smiling" in an "abnormal" manner and he was "twitching" with "constant movement." Sergeant Jenkins similarly testified Defendant had some "uncontrollable" "twitching of his fingers." The Officers collectively testified that based on their training and experience, Defendant's twitching was consistent with usage of methamphetamine or a similar stimulant. Trooper Johnson also suspected Defendant was under the influence of drugs rather than alcohol because there was no odor of alcohol or any alcohol containers visible in the vehicle.

Trooper Johnson asked Defendant to step outside of his vehicle so he could ask him more questions and conduct field sobriety tests. During Trooper Johnson's questioning of Defendant, the trooper asked Defendant where he had been, and Defendant stated he was at work and then went to a friend's house. Upon further questioning by Trooper Johnson, Defendant denied drinking any alcohol and he refused to let the Officers search his truck. Trooper Johnson also asked Defendant when he had last used drugs, and Defendant admitted he used drugs but claimed it had been "sometime ago." Additionally, Defendant inconsistently said he was going to McDonalds – which was closed – to get a burger when he also said that he just had a burger, and Trooper Johnson testified such an inconsistency is typical of impaired drivers.

4

Defendant agreed to perform field sobriety tests, and Trooper Johnson conducted five such tests – the alphabet test, the counting test, the modified Romberg test, the one-leg-stand test, and the walk-and-turn test. Defendant successfully completed the alphabet test, but he failed the remaining four tests.

Based on the totality of the circumstances set out above, the Officers determined Defendant was under the influence of a drug and arrested him for driving while intoxicated. After being advised of Missouri's Implied Consent Law, Defendant consented to having his blood drawn for testing. Subsequent to Defendant's arrest, Defendant's truck was searched, and troopers found baggies containing methamphetamine, a straw, and multiple pipes. Additionally, Defendant made statements following his arrest admitting he used methamphetamine and marijuana and taking responsibility for the items found in his truck. Defendant submitted to a drug recognition evaluation at the hospital, which concluded he was under the influence of a drug. Additionally, a laboratory analysis revealed Defendant's blood contained diazepam, methamphetamine, amphetamine, and carboxy-THC.

**B.     Relevant Procedural Posture**

After Defendant's bench trial, the trial court found Defendant guilty of possession of a controlled substance (Count I), unlawful possession of drug paraphernalia (Count II), driving while intoxicated (Count III), and failure to signal (Count IV). The trial court entered a judgment in accordance with its guilty verdicts and sentenced Defendant to six years of imprisonment on Count I, fined Defendant $50 on Count II, and fined Defendant $50 on Count IV. As to Count III, the trial court suspended imposition of sentence and placed Defendant on a period of probation for two years. Defendant appeals.

## II.    DISCUSSION

Defendant raises one point on appeal. Before setting out and considering the merits of Defendant's point, we will address the State's argument that Defendant's entire appeal should be dismissed on the grounds there is not a final, appealable judgment because the trial court suspended imposition of sentence as to Count III.

## A.    Whether There is a Final, Appealable Judgment in this Case

In support of the State's argument that there is not a final, appealable judgment in this case, the State primarily relies upon *State v. Waters*, 597 S.W.3d 185 (Mo. banc 2020).

In *Waters*, the defendant was charged with four counts. *Id*. at 186. A jury found the defendant guilty of two counts, and the trial court imposed a sentence on those two counts. *Id*. As to the other two counts, the jury could not reach a verdict, the trial court declared a mistrial, and the trial court did not impose a sentence. *Id*. Under those circumstances, the Missouri Supreme Court held that "[a] judgment in a criminal case is final if the judgment disposes of all disputed issues and leaves nothing for future adjudication" and "[b]ecause [the defendant] was charged with four counts . . . and two of those counts remain pending before the circuit court, the circuit court's judgment of conviction on only two of the counts is not final for the purposes of appeal." *Id*. at 187, 189 (citation omitted). In other words, the Supreme Court held that when a defendant is charged with multiple counts and there is not an adjudication of guilt with respect to all charged counts, those unadjudicated counts remain pending before the trial court, and there is not a final appealable judgment. *See id*.

In contrast to the circumstances in *Waters*, in this case there is an adjudication of guilt with respect to all four counts Defendant was charged with, and, therefore, there are no unadjudicated counts that remain pending before the trial court. Additionally, unlike in *Waters*,

6

here the trial court suspended the imposition of sentence as to one count (Count III). Because the circumstances of this case are distinguishable from those in *Waters*, the State's reliance on *Waters* is misplaced.

Moreover, under circumstances where, as here, there was an adjudication of guilt on all counts a defendant was charged with, a sentence was imposed on one or more counts, and there was a suspended imposition of sentence ("SIS") as to one count, Missouri Courts have repeatedly held there is a final, appealable judgment with respect to the counts for which a sentence was imposed. For example, in *State v. Moore*, there was an adjudication of guilt on all four counts the defendant was charged with, a sentence was imposed on three counts, and there was a suspended imposition of sentence as to one count. 352 S.W.3d 392, 395-98 (Mo. App. E.D. 2011). Our Court held there was a final, appealable judgment with respect to the three counts for which the trial court imposed a sentence, and we reviewed the merits as to the defendant's appeal of those counts. *Id*. at 395-404. Additionally, we dismissed the defendant's appeal of the SIS count because a suspended imposition of sentence is not a final, appealable judgment. *Id*. at 396.

Similarly, in *State v. Kimberley*, there was an adjudication of guilt on both of the two counts the defendant was charged with, a sentence was imposed on Count II, and there was a suspended imposition of sentence as to Count I. 103 S.W.3d 850, 853-55 (Mo. App. W.D. 2003) (as modified on denial of rehearing on May 27, 2003). The Western District held there was a final, appealable judgment with respect to Count II, and the Court reviewed the merits as to the defendant's appeal of Count II. *Id*. at 855-60. Additionally, the Court dismissed the defendant's appeal as to Count I because a suspended imposition of sentence is not a final, appealable judgment. *Id*. at 855. Importantly, the *Kimberley* Court noted: "In numerous Missouri cases, the

appeal has been dismissed as to the SIS count, but allowed to go forward as to all other counts." *Id.* (citing *State v. Downen*, 952 S.W.2d 807, 808 n.2 (Mo. App. W.D. 1997); *State v. Hanners*, 827 S.W.2d 273, 274 (Mo. App. E.D. 1992); *State v. Sandbothe*, 750 S.W.2d 664, 665-66 (Mo. App. W.D. 1988); *State v. Williams*, 682 S.W.2d 499 (Mo. App. E.D. 1984)); *see also State v. Ndon*, 583 S.W.3d 145, 147-56, 153 n.1 (Mo. App. W.D. 2019); *State v. Johnson*, 456 S.W.3d 497, 498-505, 500 n.3 (Mo. App. E.D. 2015).

Under the circumstances of this case, where there was an adjudication of guilt as to all four counts Defendant was charged with, (1) we hold there is a final, appealable judgment as to Counts I, II, and IV because the trial court imposed sentences with respect to those counts; and (2) we hold there is not a final, appealable judgment as to Count III because the trial court suspended imposition of sentence with respect to that count. *See id.*; *Moore*, 352 S.W.3d at 395-404; *Kimberley*, 103 S.W.3d at 853-55. To hold otherwise would subject an individual in Defendant's situation to one of two equally unjust circumstances: (1) accepting a trial court's SIS at sentencing and not having a right to appeal another count for which he is incarcerated until an indeterminate time (when he either completes his probation and his SIS count is eradicated, or when he violates his probation and the trial court imposes a sentence); or (2) rejecting a trial court's SIS at sentencing and requesting the court to instead immediately impose a sentence or order a sentence with a suspended execution of sentence, thereby foregoing the potential benefits of having the stigma of his SIS count eradicated if he successfully completes probation. *See State v. Lynch*, 679 S.W.2d 858, 862 (Mo. banc 1984) (Blackmar, J., dissenting) (similarly holding). "[D]efendants should not have to play Russian Roulette in the pursuit of justice." *Id.*

Accordingly, we will review the merits of Defendant's appeal of Counts I, II, IV, and we dismiss Defendant's appeal of Count III. *See Moore*, 352 S.W.3d at 395-404; *Kimberley*, 103 S.W.3d at 853-55 (collecting cases set out in detail above).

**B.      Whether the Trial Court Erred in Denying Defendant's Motion to Suppress and in Admitting Incriminating Evidence Obtained as a Result of the Traffic Stop at Trial**

In Defendant's sole point on appeal, he asserts the trial court erred in denying his motion to suppress and in admitting incriminating evidence obtained as a result of the traffic stop at trial. Defendant specifically argues evidence regarding his possession of drugs, his possession of drug paraphernalia, and his drug usage should have been excluded because the Officers lacked reasonable suspicion to extend the traffic stop by performing field sobriety tests on Defendant. For the reasons discussed below, we disagree.

**1.      Standard of Review**

In this case, although Defendant filed a pre-trial motion to suppress challenging the admission of evidence regarding his possession of drugs, his possession of drug paraphernalia, and his drug usage, he failed to object to the admission of such evidence at trial. Defendant requests plain-error review if our Court finds he failed to preserve the issue for appeal.

As recently held by the Missouri Supreme Court:

> Objecting to the admission of evidence in a pretrial motion is not sufficient to preserve for appeal any error in failing to exclude it . . .. To preserve a pretrial objection, a party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection. Only an objection made timely *at trial* will preserve an issue for appeal.

*Petersen v. State*, 658 S.W.3d 512, 515 (Mo. banc 2022) (emphasis in original) (internal citations and quotations omitted). The purpose of the rule is to allow the trial court the opportunity to consider its prior ruling on the pre-trial motion against the backdrop of evidence which is

9

actually adduced at trial. *Id*.; *State v. Keely*, 791 S.W.2d 864, 865 (Mo. App. E.D. 1990); *State v. Fields*, 636 S.W.2d 76, 79 (Mo. App. E.D. 1982). Moreover, the "well[-]established" rule that only an objection made timely at trial will preserve an issue for appeal is "strictly applied" even where, as in this case, the trial judge who admitted the challenged evidence was the same judge who had recently denied the defendant's motion to suppress. *See id*.; *State v. Huchting*, 927 S.W.2d 411, 415 (Mo. App. E.D. 1996).[2]

In this case, Defendant failed to object to the admission of the evidence regarding his possession of drugs, his possession of drug paraphernalia, and his drug usage at trial, and, therefore, he failed to preserve this issue for appeal. *See id*. Because Defendant's argument is not preserved for review, his claim can only be reviewed for plain error. *See, e.g., Huchting*, 927 S.W.2d at 415.

Where an appellant-defendant fails to preserve an issue for appeal, this Court may still hear such a claim pursuant to Missouri Supreme Court Rule 30.20 (2023). *See State v. McKay*, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Under plain-error review, we will only grant a defendant relief if we find an error occurred which affected his rights so substantially that a manifest injustice or miscarriage of justice resulted. *McKay*, 411 S.W.3d at 304; *see also State v. Loyd*, 326 S.W.3d 908, 911-12 (Mo. App. W.D. 2010) (discussing plain-error review in the context of an appeal challenging the denial of a motion to suppress). Not all errors rise to the level of "plain error"; plain errors are only those errors which are evident, obvious, and clear. *McKay*, 411 S.W.3d at 304-05; *see also Loyd*, 326 S.W.3d at 911.

---

[2] *But see State v. Mendoza*, 75 S.W.3d 842, 844 (Mo. App. S.D. 2002) (holding an issue was adequately preserved for review even where the defendant did not object to the admission of the evidence at trial where, *inter alia*, and unlike in this case, the record showed defense counsel "carr[ied] the motion to suppress forward [to trial]"); *State v. LaFlamme*, 869 S.W.2d 183, 186 (Mo. App. W.D. 1993) (holding an issue was adequately preserved for review even where the defendant did not object to the admission of the evidence at trial where, *inter alia*, and unlike in this case, "[t]he trial court considered [the evidence] as though a timely objection had been made").

10

At a hearing on a motion to suppress, the State has the burden of proving that the seizure was constitutionally permitted. *Loyd*, 326 S.W.3d at 911 (citing *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)). Where, as in this case, a defendant challenges the denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. *Id*. We view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling, and we defer to the trial court's factual findings and credibility determinations. *Loyd*, 326 S.W.3d at 911 (citing *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007)).

### 2. General Law

The Fourth Amendment to the U.S. Constitution provides individuals the right to be free from unreasonable searches and seizures.[3] *Pike*, 162 S.W.3d at 472. As a general rule, a warrantless seizure is unreasonable, and, therefore, unconstitutional, unless an exception applies. *Id*. One common exception, recognized in *Terry v. Ohio*, is that an officer is permitted to make a brief investigatory stop of an individual or vehicle if the officer has a reasonable suspicion, based on specific and articulable facts, that an individual or occupant of a vehicle is or has been engaged in criminal activity. *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968)); *Pike*, 162 S.W.3d at 472-73 (citing *Terry*, 392 U.S. 1)).

"A suspicion is reasonable when, in light of the totality of the circumstances, the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Starks*, 471 S.W.3d 375, 377 (Mo. App. E.D. 2015) (quoting *State v. Grayson*, 336 S.W.3d 138, 143 (Mo. banc 2011) (quoting

---

[3] "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009); *see also Pike*, 162 S.W.3d at 472.

*Terry*, 392 U.S. at 21). In determining whether reasonable suspicion existed for an investigatory stop, "courts consider an officer's experience and specialized training from which the officer makes inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Starks*, 471 S.W.3d at 378 (bracketed alterations, citation, and internal quotations omitted).

A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a justified and reasonable seizure under the Fourth Amendment. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). "A traffic violation, however, is not required to create reasonable suspicion to justify a stop; justification may be based on erratic or unusual operation [of a vehicle]." *Pike*, 162 S.W.3d at 473; *see also State v. Byers*, 551 S.W.3d 661, 669-70 (Mo. App. E.D. 2018); *State v Brown*, 332 S.W.3d 282, 287 (Mo. App. S.D. 2011). Nevertheless, the fact that a police officer may detain an individual for a traffic stop does not justify his or her indefinite detention. *Barks*, 128 S.W.3d at 516. Instead, the detention may only last for the time necessary for the officer to conduct a reasonable investigation of the reason for the stop. *Id*.

"In determining whether a traffic stop takes too much time to be justified as investigatory, courts 'examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012) (quoting *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985)). It is constitutionally permissible for an officer to detain an individual briefly for a reasonable time and to ask a moderate number of questions to try confirm or dispel the officer's suspicion of illegal activity. *Stover*, 388 S.W.3d at 149-50 (citing *Sharpe*, 470 U.S. at 686); *State v. Ybarra*, 637 S.W.3d 644, 651-55 (Mo. App. E.D. 2021).

12

**3.      Analysis**

In this case, Defendant's vehicle was initially stopped after the Officers witnessed Defendant committing several traffic violations and operating his vehicle in an erratic and unusual manner.  Specifically, the Officers observed Defendant's truck, (1) changing lanes without using a turn signal; (2) "weaving in its lane," i.e., "get[ting] close to one dotted[-]white line, and then get[ting] close to the other"; (3) suddenly exiting off the highway; (4) proceeding down the exit ramp at an excessive speed and straddling the line dividing two lanes; (5) making a wide turn; (6) driving in a left-turn lane with the left-turn signal on but without turning left; and (7) again driving on a dotted-white line.  Trooper Johnson testified that based on his training and experience, Defendant's traffic violations were indicators he was potentially intoxicated by drugs or alcohol.  Similarly, Sergeant Jenkins testified, "[t]here were some violations that were consistent with possible impairment."  Based on these collective circumstances, the Officers' stop of Defendant's truck, after their observation of multiple violations of state traffic laws and their observation of erratic and unusual operation of the vehicle, constituted reasonable suspicion to justify stopping Defendant's vehicle and investigating whether Defendant was driving while intoxicated.  *See Pike*, 162 S.W.3d at 473; *Barks*, 128 S.W.3d at 516; *see also Byers*, 551 S.W.3d at 669-70; *Brown*, 332 S.W.3d at 287.

Additionally, we find Trooper Johnson then permissibly detained Defendant briefly for a reasonable time, asking him a moderate number of questions, and took no longer than was reasonable to either confirm or dispel the Officers' reasonable suspicion that Defendant was driving while intoxicated.  *See Stover*, 388 S.W.3d at 149; *see also Sharpe*, 470 U.S. at 686; *Ybarra*, 637 S.W.3d at 651-55.  First, after initiating the stop, Trooper Johnson asked Defendant why he failed to keep his truck within its own lane.  Defendant replied, "We're not hurting

13

anybody. Just driving here," thereby failing to directly answer the trooper's question and failing to dispel the Officers' suspicion that Defendant was driving while intoxicated.

Second, the Officers' further observation and questioning of Defendant also failed to dispel the Officers' suspicion that Defendant was driving while intoxicated. Specifically, the Officers witnessed Defendant "constantly smiling" in an "abnormal" manner and "twitching" with an "uncontrollable" and "constant movement" during Trooper Johnson's questioning of Defendant. The Officers collectively testified that based on their training and experience, Defendant's twitching was consistent with the usage of methamphetamine or a similar stimulant. Additionally, Trooper Johnson asked Defendant when he had last used drugs, and Defendant admitted he used drugs but claimed it had been "sometime ago." Finally, Defendant inconsistently said he was going to McDonalds – which was closed – to get a burger when he also said that he just had a burger, and Trooper Johnson testified such an inconsistency is typical of impaired drivers.

Based on the totality of the circumstances during the traffic stop and the Officers' training and experience, it was reasonable for the Officers to continue to suspect Defendant was driving while intoxicated, and it was also reasonable for Trooper Johnson to ask Defendant if he would be willing to take some field sobriety tests in order to more accurately confirm or dispel such a suspicion. *See State v. Keeth*, 203 S.W.3d 718, 726 (Mo. App. S.D. 2006) (similarly holding); *see also Starks*, 471 S.W.3d at 377 (citing *Grayson*, 336 S.W.3d at 143) (citing *Terry*, 392 U.S. at 21).

Therefore, we find no merit in Defendant's argument that the incriminating evidence obtained as a result of the traffic stop should have been excluded because the Officers lacked reasonable suspicion to extend the traffic stop by performing field sobriety tests on Defendant.

14

The trial court did not err, plainly or otherwise, in denying Defendant's motion to suppress and in admitting such evidence. Defendant's sole point on appeal is denied.

### III. CONCLUSION

Based on the foregoing, we affirm the judgment as to Counts I, II, and IV, and we dismiss the appeal as to Count III.

ROBERT M. CLAYTON III, Judge

Angela T. Quigless, P.J., and
Sherri B. Sullivan, J., concur.