STATE of Missouri, Respondent,

v.

LaCrista J. NEEL, Appellant.

No. WD 58944.

Missouri Court of Appeals, Western District.

April 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application to Transfer Denied Aug. 27, 2002.

 

John M. Schilmoeller, Kansas City, for Appellant.

Philip M. Koppe, Kansas City, for Respondent.

Before HARDWICK, P.J., ULRICH, J. and HANNA, Sr.J.

LISA WHITE HARDWICK, Judge.

Lacrista Neel was charged and convicted by jury on six counts: Count 1, attempt to possess a chemical with intent to create methamphetamine, §§ 195.420, 564.011 RSMo (2000); Count 2, attempt to manufacture methamphetamine, § 195.211; Count 3, possession of drug paraphernalia, § 195.233; Count 4, possession of methamphetamine, § 195.202; Count 5, manufacture of methamphetamine, § 195.211; and Count 6, possession of drug paraphernalia, § 195.233. She was sentenced to concurrent prison terms of one year on Count 1, five years on Count 2, and one year on Count 3. She was sentenced to prison terms of two years on Count 4, five years on Count 5, and one year on Count 6, to be served concurrently but consecutively with the sentences on Count 1, 2, and 3, for a total of ten years imprisonment.

Neel raises two points on appeal: I) the evidence was insufficient to convict her on Counts 1, 2 and 3; and II) relative to Count 4, the trial court erred in denying her motion to suppress evidence. As the incidents underlying these two issues arose independently, the relevant facts will be addressed in the context of each legal argument. The judgment is affirmed in part and reversed in part.

### Sufficiency of Evidence on Counts 1, 2 and 3

To warrant submission of a case to the jury, "the evidence must be sufficient for a rational trier of fact to find all essen-

tial elements of the crime beyond a reasonable doubt." *State v. Ford*, 906 S.W.2d 761, 764 (Mo.App.1995). In reviewing a claim of insufficiency of the evidence, this court determines whether sufficient evidence exists from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo.banc 1993). We must accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *Id.* This court does not weigh the evidence, nor does it determine the reliability or credibility of the witnesses. *State v. Broseman*, 947 S.W.2d 520, 524 (Mo.App.1997).

Viewed in a light most favorable to the state, the following facts are relevant to Counts 1, 2, and 3. On the evening of October 8, 1999, Pettis County sheriff's deputies, Douglas Retherford and Tim Carr, responded to calls reporting "possible drug activity" at a trailer home in the Longwood area. They arrived after dark and saw a Chevrolet parked next to the trailer. Two men, later identified as David Paxton, Jr., and David Paxton, Sr., were standing on opposites sides of the parked car. As the deputies approached the Paxtons, they heard another vehicle's engine start from behind the trailer. Deputy Carr ran around the trailer and saw a white van leave the scene. He radioed information to the police dispatch regarding the van.

William Connor, also a Pettis County sheriff's deputy, heard the radio dispatch describing the van. While parked on the side of the road in his marked patrol car, he saw a white van drive by slowly. Deputy Connor saw a flash of light from inside the van and pulled out to follow the vehicle. When a bright spotlight was flashed from the van a second time, Deputy Connor turned on his emergency light and siren. The van's driver increased speed, refusing to stop. Occupants of the van flashed the spotlight out of the passenger side window, reflected it off the rear-view mirror, and attempted to shine it out the back window. As Deputy Connor chased the van at speeds of 60–65 mph, he saw two metal cans tossed out of the van in the area of Route D and High Point Road. His patrol car struck one of the cans.

Deputy Connor's chase ended after approximately eight miles, when the van turned onto a dead-end road and got stuck in the mud. A man ran from the driver's side, and a woman fled from the passenger side of the van. Deputy Connor caught up with the woman, Lacrista Neel, and apprehended her after a brief struggle. The man, David Todd, surrendered after Deputy Connor spotted him hiding in the woods.

After Neel and Todd were taken into custody, Deputy Connor returned to the area where the two cans were tossed out of the van during the chase. He recovered two cans of Toluene, one of which was completely flattened.

At the trailer site, sheriff's deputies towed and later searched the Chevrolet, which was owned by the Paxtons. The glove compartment of the car contained several coffee filters with "some pills" inside. A paint store receipt for Toluene, dated October 7, 1999, was found on the vehicle's floorboard.

Deputies found what appeared to be one-half of a 50–gallon drum turned over and covering the hitch of the trailer. Beneath the drum was a "soda-type" canister. When the valve on the canister was released, it emitted "an ammonia smell." The deputies moved the canister away from the trailer and shot it with a rifle. The canister exploded, releasing a cloud that the deputies said smelled like anhydrous ammonia.

The deputies also searched the trailer home, which was filled with trash and appeared abandoned. Inside the trailer they found a "For Sale" sign for a 1978 white Ford van. They seized a pitcher filled with a smelly, brown chunky substance; an empty container of drain cleaner; an empty pill bottle, which appeared to have formerly contained pseudoephedrine tablets; a plastic container that appeared to be a "smoker"; a red gas can; coffee filters; a bent fork; a pocket knife; and a paper plate.

On October 9, 1999, Sheriff's Deputy Mark Morgan, an undercover agent, encountered Neel with David Paxton, Sr. and David Paxton, Jr. while driving on Massachusetts Street in Sedalia. The Paxtons and Neel were previously acquainted with Deputy Morgan, but did not know he was an undercover agent employed by the Sherrif's Department. They flagged Deputy Morgan down, asking if he could help them find some money to obtain Todd's release from jail. Deputy Morgan agreed, and both Neel and David Paxton, Sr. entered his vehicle.

As he drove to various locations to obtain the needed money, Morgan heard Neel discuss events that had occurred the night before when "they had just finished a cook at the trailer at Longwood." Neel said that she "had been up there and that the sheriff's department had showed up" so she and David Todd "took off." Neel "used a spotlight to blind the pursuing officers so they could get rid of the Toluene cans and the three coffee filters full of dope." When Morgan saw Neel again a few days later, Neel said they had retraced the pursuit route and were unable to find the discarded "dope" and "filters."

Based on the events of October 8 and 9, 1999, Neel was arrested and charged with: Count 1, attempt to possess a chemical with intent to create methamphetamine,

§§ 195.420, 564.011; Count 2, attempt to manufacture methamphetamine, § 195.211; and Count 3, possession of drug paraphernalia, § 195.233. She was convicted on all three counts under the theory that she committed the crimes in concert with David Paxton, Jr., David Paxton, Sr., or David Todd. Neel challenges the sufficiency of the evidence to support these convictions.

■ With respect to accomplice liability, "Missouri has eliminated the distinction between principals and accessories, and now, all persons who act in concert to commit a crime are equally guilty." *State v. Wurtzberger*, 40 S.W.3d 893, 895 (Mo. banc 2001). Pursuant to § 562.041, "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." *Id.* at 895–896.

■ To make a submissible case of aiding and abetting, there must be some evidence that defendant associated himself with the venture or participated in the crime in some manner. *State v. Bradshaw*, 26 S.W.3d 461, 469 (Mo.App. W.D. 2000). The state is not required to show that the defendant "personally committed every element of the crime; mere encouragement is enough." *Id.* Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. *Wurtzberger*, 40 S.W.3d at 896. "The law imputes to [the defendant] the criminal agency of his accomplices." *Bradshaw*, 26 S.W.3d at 469. "[A]ssociating with those that committed the crime before, during, or after its occurrence, acting as part of a show of force in the commission of the crime, and/or attempting flight from the

crime scene" are all factors which may be considered. *State v. Barnum,* 14 S.W.3d 587, 591 (Mo. banc 2000).

## Count I: Attempted Possession of Anhydrous Ammonia

Neel was charged in Count I with attempted possession of a chemical with the intent to create a controlled substance, in violation of § 564.011. The factual basis for the charge, as set forth in the information, was that "the defendant, acting together with David Paxton, Jr., David Todd, and David Paxton, Sr., knowingly possessed . . . anhydrous ammonia, a precursor ingredient of methamphetamine, with the intent to manufacture methamphetamine, and such conduct was a substantial step toward the commission of [a] crime" as identified in § 195.420.1.[1]

To convict Neel on Count I of "*attempt*" under an accomplice liability theory, the State was required to prove that: 1) Neel had the purpose of acting together with Todd, Paxton, Jr., or Paxton, Sr., to aid the possession of anhydrous ammonia with the intent to create methamphetamine; and 2) that Neel, Todd, Paxton, Jr., or Paxton, Sr. took a substantial step toward the commission of that offense. A "substantial step" is an act that is "strongly corroborative of the firmness of the actor's intent to complete the commission of the offense." *State v. O'Brien,* 5 S.W.3d 532, 534 (Mo.App.1999); § 564.011.1. The conduct must be indicative of the defendant's purpose to complete the offense. *Id.*

Neel contends the State failed to prove that she or any of her accomplices took a substantial step towards actual or constructive possession of the anhydrous ammonia. "Actual possession of a substance is where the person has the substance on his or her person or within his or her easy reach and convenient control." *State v. Agee* 37 S.W.3d 834, 836 (Mo.App. S.D.2001). "If actual possession is not present, constructive possession of the drugs or the drug components and apparatus will satisfy this burden if other facts exist which buttress the inference of the defendant's requisite mental state." *State v. Withrow,* 8 S.W.3d 75, 80 (Mo.banc 1999).

Constructive possession can be shown where a person has the power and intention at a given time to exercise dominion over the substance either directly or through another person or persons. *Agee* 37 S.W.3d at 836. "[T]he state must, at a minimum, establish that the defendant had access to and control over the premises where the substance was located." *State v. West,* 21 S.W.3d 59, 63 (Mo.App. W.D.2000). Where a person is present on the premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. *Id.*

In Neel's case, the anhydrous ammonia was found in a canister, hidden under one-half of a 50–gallon drum that covered the hitch of the Longwood trailer. When the deputies arrived on the evening

---

1. Section 195.420.1 states: ·
   1. It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemical proven to be precursor ingredients of methamphetamine or amphetamine, as established by expert testimony pursuant to subsection 3 of this section, with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance or a controlled substance analogue in violation of section 195.005 to 195.425.

of October 8, 1999, Paxton, Jr. and Paxton, Sr. were standing outside a car parked next to the trailer. Neel and Todd fled from the scene in a white van. There is no evidence that any of the individuals had actual possession of or attempted to gain actual possession of the anhydrous ammonia.

Nor is there evidence of constructive possession. None of the individuals had exclusive use or possession of the abandoned trailer or the surrounding premises. There is no indication that any of them even knew the canister of anhydrous ammonia was hidden on the premises. Trial testimony established that the trailer was owned by a third party, Charles Curry, who had no involvement in these proceedings.

The incriminating evidence against Neel consisted of her flight from the Longwood trailer area, her statements to Morgan regarding the use of the spotlight to blind the pursuing officer and disposal of the Toluene and coffee filters with dope, the coffee filters and pills found in the glove compartment of the Paxton car, and Morgan's testimony that a cook had taken place at the trailer. While these factors may be considered in the totality of circumstances, they are insufficient to show attempted possession of the anhydrous ammonia hidden on the trailer premises. The evidence was therefore insufficient to prove Neel guilty beyond a reasonable doubt on Count I.

## Count 2: Attempt to Manufacture Methamphetamine

In Count 2, the State alleged that Neel acted together with David Paxton, Sr., David Paxton, Jr., and David Todd to combine pills containing pseudoephedrine with a substance believed to be anhydrous ammonia, and possessed equipment and Toluene, and such conduct was a substantial step toward the commission of attempt to manufacture methamphetamine in violation of § 195.211. Neel contends the State failed to prove the two elements necessary to convict her under § 195.211: 1) an intent to manufacture methamphetamine; and 2) a substantial step toward commission of that offense. *State v. Graham*, 2 S.W.3d 859, 863 (Mo.App. W.D.1999).

■ Neel correctly points out that many of the items found at the trailer site were not shown to be under the control of the alleged accomplices. We have already determined there was no actual or constructive possession of the anhydrous ammonia. Likewise, none of the individuals were found in control of any of the items found inside the trailer. The pills recovered from the Paxtons' vehicle were unidentified and, as with the coffee filters, could have been used for legally valid purposes. None of these items, alone, are sufficient to prove attempted manufacture of methamphetamine.

Neel, however, ignores key evidence of her own conduct and admissions to Deputy Morgan that support her conviction on Count 2. The State presented evidence that Neel and Todd fled from the Longwood trailer site in a white van on October 8, 1999, as deputies arrived to investigate reports of drug activity. The van was pursued by another deputy, who saw two metal cans thrown out of the window and a spotlight flashed toward him from passengers inside the van. One of the cans hit the deputy's car. Neel and Todd were apprehended when the van got stuck in the mud on a dead-end road. The arresting deputy then retraced the chase route and found two cans of Toluene, one of which was flattened, in the area where the cans were thrown out of the van.

Neel had a conversation with undercover agent Mark Morgan that indicated her knowledge of "a cook" at the Longwood

trailer on the evening of October 8, 1999. Neel admitted she was at the trailer and "took off" with David Todd when the deputies arrived to investigate. Todd drove the van and Neel used the spotlight to blind the pursuing officers as they tossed cans of Toluene and threw coffee filters "full of dope" out of the van window.

The totality of the evidence indicates that methamphetamine was being manufactured at the Longwood trailer on October 8, 1999, and that Neel aided or abetted in the crime. Although Neel did not specifically identify who was involved in the "cook," she admitted that she fled the scene with Toluene, a chemical used in the manufacturing process, and with coffee filters containing the finished product. Her statements, along with the items found inside the trailer and the Paxtons' car, were sufficient to prove the accomplices had the intent to manufacture methamphetamine and took a substantial step toward the commission of that crime.

**Count 3: Possession of Drug Paraphernalia**

In Count 3, Neel was charged with acting together with David Paxton, Jr., David Todd, and David Paxton, Sr., to possess coffee filters, containers, and a spoon, with intent to use the paraphernalia to manufacture and produce methamphetamine. The evidence to support Neel's conviction on this charge came from the statements she made to Deputy Morgan on the day after she fled the Longwood trailer site. Neel admitted she and Todd had possession of the coffee filters and that "dope" was inside the coffee filters. Neel admitted they got rid of the coffee filters by throwing them out of the van window as they were pursued by a sheriff's deputy. Neel's flight from the site of a "cook," and her possession and disposal of the dope and Toluene, constituted sufficient evidence that she had control of the

coffee filters and intended to use, or had already used them, to produce methamphetamine.

**Denial of Suppression Motion on Count 4**

Appellate review of the trial court's ruling on a motion to suppress is limited to determining whether the evidence was sufficient to support the trial court's ruling. *State v. McNaughton*, 924 S.W.2d 517, 522–523 (Mo.App. W.D.1996). An appellate court is not limited to the record made at the pretrial hearing on that motion; rather the entire record may be considered, including any additional evidence presented at trial. *State v. Deck*, 994 S.W.2d 527, 534 (Mo.banc 1999), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). The evidence and all of its reasonable inferences are viewed in a light most favorable to the ruling. *McNaughton*, 924 S.W.2d at 523. A trial court's ruling on a motion to suppress will be reversed only if it is "clearly erroneous." *State v. David*, 13 S.W.3d 308, 311 (Mo.App. W.D.2000).

Neel challenges the trial court's denial of her motion to suppress physical evidence with regard to the Count 4 charge of methamphetamine possession. Viewed in a light most favorable to the trial court's ruling, the following facts are relevant to this charge.

In the early morning hours of October 30, 1999, Mike Perkins, a Sedalia police officer, was dispatched to 509 East Howard in response to a disturbance call. The caller, Christine Beeson, had reported a theft incident involving a shotgun. Officer Perkins and Officer Tim Resch arrived and spoke with Beeson, who said that her boyfriend, Donald Higgins, had taken her purse and threatened to trade it for a shotgun. Beeson said Higgins left her house on his bicycle and that she saw him

in a garage behind a residence at 501 East Howard.

Officers Perkins and Resch went to 501 East Howard and observed three or four persons, including Neel, in the back yard and near the garage. They approached Neel and told her they were looking for Higgins. Neel said she did not know Higgins. When Officer Perkins asked if they could look in the garage, Neel "became defensive and nervous" and asked if he had a warrant.

Officer Resch thereupon "checked [the] identification" of the four individuals, including Neel. He learned from the dispatcher that there was a municipal warrant outstanding for Neel's arrest. After receiving this information, Officer Perkins arrested Neel and did a "partial search incident to arrest" by patting down her waist area. As the officers attempted to handcuff Neel, she resisted and tried to reach into her pants pocket. Officer Resch restrained Neel and three times asked what was in her pocket. Neel responded each time that she did not know. Officer Resch reached into the pocket of Neel's pants and pulled out several coffee filters. Inside the filters was a white powder, which later proved to be .09 grams of methamphetamine. A female officer subsequently searched Neel and found a double-edge razor blade and two glass vials.

Based on these facts, Neel was charged with possession of methamphetamine in violation of § 195.202. Neel filed a pretrial motion to suppress the evidence seized incident to her arrest. The trial court denied the motion.

Neel argues on appeal that the trial court erred in refusing to suppress the methamphetamine evidence because it was the "illegal fruit" of her unlawful detention by police. She asserts the officers violated her Fourth Amendment rights because they lacked "reasonable suspicion" that she was engaged in any criminal activity at the time she was detained.

■■■ The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures. *Deck*, 994 S.W.2d at 534. Missouri's constitutional "search and seizure" guarantee, Article I § 15, is co-extensive with the Fourth Amendment. *Id.* A warrant based upon probable cause is generally required to justify a search or seizure. *Id.*

■■■ Not all personal intercourse between policemen and citizens constitutes a "seizure" for Fourth Amendment purposes. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A person is not "seized" until either being subjected to the application of physical force by the police or by voluntarily submitting to the assertion of police authority. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *Deck*, 994 S.W.2d at 535. Law enforcement officers do not violate the Fourth Amendment or "seize" an individual by merely approaching him or her on the street or some other place and asking questions. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Consequently, even when law enforcement officers have no basis for suspecting a particular individual, they may ask to see the person's identification and request consent to search, so long as they do not convey that compliance with those requests is required. *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382.

■■■ In the present case, Neel was neither seized nor detained when the officers questioned her about Higgins in the backyard of 501 East Howard. Neel's nervous reaction to the question caused the officers to believe she might be concealing Higgins' whereabouts. Thus, the officers asked for

identification, but did not seek to detain or restrict Neel's movement in any way. It was only after the officers checked her identification and learned there was an outstanding municipal warrant for her arrest, that Neel was detained and searched. Based on the existence of the warrant, her arrest was constitutionally valid and the drugs seized from her pocket were admissible under the search-incident-to arrest doctrine. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *State v. Tackett*, 12 S.W.3d 332, 338 (Mo.App. W.D.2000).

In her brief, relying on *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo.banc 1998), Neel appears to argue that the officers lacked probable cause to arrest her, even *after* they learned of the warrant from the dispatcher, because the officers "did not observe any independent acts giving rise to probable cause" and because "[t]here was no evidence regarding the warrant information given out by the dispatcher, and the [S]tate produced no evidence to show how such warrants were issued."

Neel does not argue that a warrant for her arrest did not exist. Rather, she asserts that *Kinkead* required the State to establish the warrant's validity. In *Kinkead*, unlike the present case, the defendant was arrested for driving while suspended based upon incorrect or outdated information contained in a police database which the dispatcher had communicated to the arresting officers. *Id.* The Missouri Supreme Court ruled that the arrest was unlawful because the State failed to call the dispatcher at trial to show that the information upon which the dispatcher relied, while incorrect at the time of the defendant's arrest, might nonetheless have been sufficiently reliable to establish probable cause for that arrest. *Id.*

The undisputed evidence presented at the pretrial hearing on the motion to suppress, and at trial, conclusively established that a valid municipal warrant existed for Neel's arrest. Contrary to Neel's argument, *Kinkead* did not require the State to show the basis of the dispatcher's report in the absence of any dispute that the warrant information was current, accurate and reliable.

Neel was not "detained" until she was arrested pursuant to a valid municipal warrant. Since the methamphetamine was discovered on her person pursuant to a valid search incident to that arrest, the trial court did not err in overruling Neel's pretrial motion to suppress or in admitting the challenged evidence at trial. Point II is denied.

### Conclusion

The judgment is reversed on Count 1 and affirmed on Counts 2, 3 and 4. The case is remanded with instructions to enter a new judgment in accordance with this opinion.

All concur.