STATE of Missouri, Respondent,

v.

Michael R. RUSSELL, Appellant.

ED 105097

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: November 21, 2017

Robert J. Bartholomew, Assistant Attorney General, P.O. Box 899, Jefferson City, MO 65102, for respondent.

Chelsea R. Mitchell, Woodrail Centre, 1000 W. Nifong, Bldg. 7, Suite 100, Columbia, MO 65203, for appellant.

Lisa P. Page, Presiding Judge

Following a jury trial, Michael Russell ("Defendant") was convicted of one count of attempting to manufacture a controlled substance, in violation of Section 195.211,[1] under a theory of accomplice liability.

On appeal, Defendant contends the trial court: (I) erred in entering judgment against him due to the lack of sufficient evidence demonstrating he either attempted to manufacture methamphetamine or that he aided another in this attempt; and (II) abused its discretion in failing to either grant a mistrial or instruct the jury to disregard a witness's testimony that Defendant was imprisoned during trial.

We affirm.

## BACKGROUND

On February 19, 2015, Deputy Anthony Barbato and other officers from the Jefferson County Sheriff's Department executed a search warrant at the residence of Scott Eastabrook ("Eastabrook"), having probable cause to believe the residence contained a methamphetamine lab. The officers were refused entry, attempted to forcibly enter through the front door, and found this entrance to be barricaded from the inside. Deputy Barbato and his team were forced to enter the residence through the attached garage.

---

1. All statutory citations are to RSMo Cum. Sup. 2016 unless otherwise indicated.

Inside, the officers immediately encountered five people—Eastabrook and Jennifer Mullinex ("Mullinex") among them; these five were detained and taken outside. The officers also found Defendant in Eastabrook's bedroom "just standing there;" he was also detained.

In Eastabrook's bedroom and throughout the residence, Deputy Barbato and his team found numerous components commonly used in methamphetamine production, including hydrogen peroxide, isopropyl alcohol, fuel, glass dishes covered in a chemical residue, dismantled batteries, damaged lithium strips from batteries, syringes, coffee filters, tubing and containers with chemical residue, damaged cold packs, lighter fluid, aluminum foil, containers of acids, funnels, digital scales, and "a lot of pills." Eastabrook admitted in a written statement that all the "meth stuff" was his.

Deputy Barbato and his team also discovered a large piece of tubing and a bottle labeled "muriatic acid" in the bed of Defendant's truck, which was parked outside Eastabrook's residence. Deputy Barbato tested the "acid" with a pH strip, confirming the substance as acidic.[2]

Defendant was charged with one count of the class B felony of attempting to manufacture a controlled substance, and was tried before a jury.

At trial, during cross-examination of Mullinex, the State inquired as to her relationship with Defendant, specifically inquiring into their correspondence in the months leading up to trial. After a series of questions, Mullinex revealed she had corresponded with Defendant "[w]hile he was in prison." Defendant moved for a mistrial, and alternatively requested the

court instruct the jury to ignore Mullinex's statement; these requests were overruled.

The jury convicted Defendant of attempting to manufacture a controlled substance, and Defendant was sentenced to ten years of imprisonment. This appeal follows.[3]

## Point I—Sufficient Evidence Exists to Sustain Defendant's Conviction as an Accomplice to the Attempted Manufacture of Methamphetamine

In his first point on appeal, Defendant contends the trial court erred in entering judgment against him on the count of attempting to manufacture a controlled substance, in violation of Section 195.211. Defendant maintains insufficient evidence existed to prove he possessed the necessary components to manufacture methamphetamine, or that he acted together or aided another in attempting to manufacture methamphetamine. Defendant asserts he was thereby deprived of his right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 10 of the Missouri Constitution.

### Standard of Review

Appellate review of this claim is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). The evidence and all reasonable inferences drawn therefrom are viewed in a light most favorable to the jury's verdict, and we disregard all contrary evidence and inferences. *Id.* This court does not weigh the evidence, nor does it determine the reliability or credibility of the witnesses.

---

**2.** The acidic liquid was inadvertently destroyed before undergoing lab testing to determine its exact character.

**3.** Additional facts will be supplied in the analysis, as needed.

*State v. Neel*, 81 S.W.3d 86 (Mo. App. W.D. 2002). We do not act as a super juror with veto power but will defer to the trier of fact. *State v. Nash*, 339 S.W.3d 500, 559 (Mo. banc 2011).

## Analysis

The State charged Defendant with attempting to manufacture a controlled substance, methamphetamine, under a theory of accomplice liability. Thus, the State was required to prove: (1) Eastabrook (or perhaps others) had taken a substantial step in attempting to manufacture methamphetamine; and (2) Defendant, with the purpose of promoting or furthering the manufacture of methamphetamine, acted together with or aided Eastabrook (or these others) in committing this offense. *See State v. Wurtzberger*, 40 S.W.3d 893, 896 (Mo. banc 2001).

*1. Eastabrook had taken a substantial step in attempting to manufacture methamphetamine*

Section 195.211(1) states "it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." Additionally, for attempts, Section 564.011.1 provides:

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

"The act or conduct that will fulfill the substantial step requirement depends on the facts of the particular case." *State v.*

*West*, 21 S.W.3d 59, 64 (Mo. App. W.D. 2000).

Here, the evidence adduced at trial clearly reveals Eastabrook took a substantial step in attempting to manufacture methamphetamine. Deputy Barbato testified that he and other officers executed a search warrant at Eastabrook's residence, having probable cause to believe the house contained a methamphetamine lab. The officers were refused entry, attempted to forcibly enter through the front door, and found this entrance to be barricaded from the inside. Deputy Barbato and his team were forced to enter the residence through the attached garage. Inside, the officers immediately encountered five people— Eastabrook among them; the five were detained and taken outside.

In Eastabrook's bedroom and throughout the residence, Deputy Barbato and his team found numerous components commonly tied to methamphetamine production, including hydrogen peroxide, isopropyl alcohol, fuel, glass dishes covered in a chemical residue, dismantled batteries, damaged lithium strips from batteries, syringes, coffee filters, tubing and containers with chemical residue, damaged cold packs, lighter fluid, aluminum foil, containers of acids, funnels, digital scales, and "a lot of pills." *State v. Metz*, 43 S.W.3d 374, 380-81 (Mo. App. W.D. 2001) (sufficient evidence to demonstrate substantial step toward attempted manufacturing of methamphetamine, where methamphetamine and lab were discovered upon arrest and defendant admitted he had recently used meth); *State v. Mickle*, 164 S.W.3d 33, 44 (Mo. App. W.D. 2005) (evidence was sufficient to show defendant took a substantial step in attempting to manufacture meth, where arresting officer testified that at the time of arrest defendant possessed, *inter alia*, chemicals, scales, coffee filters, tubing, lithium cores and pseudoephedrine,

items which are in the officer's experience associated with manufacture of methamphetamine).

Moreover, Eastabrook later admitted in a written statement that all the "meth stuff" was his. *Wurtzberger*, 40 S.W.3d at 896 (admission that defendant's accomplice attempted to manufacture methamphetamine sufficient to support first element of accomplice liability conviction).

Thus, sufficient evidence exists to demonstrate the first prong of *Wurtzberger*: that Eastabrook attempted to manufacture methamphetamine. *Id.*

*2. Defendant had the purpose of furthering the manufacture of methamphetamine*

■■■ A person is criminally responsible for the conduct of another when "[ei]ther before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids, agrees to aid, or attempts to aid such other person in planning, committing or attempting to commit the offense. Section 562.041.1(2). The state is not required to show the defendant personally committed every element of the crime, and *"any evidence* that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *Wurtzberger*, 40 S.W.3d at 896 (emphasis added). The key is whether Defendant "had the purpose of promoting or furthering the manufacture of methamphetamine, acted together with or aided these others in committing this offense." *Id.*

■■■ Defendant maintains the evidence was insufficient to show he had the purpose of promoting or furthering Eastabrook's commission of attempting to manufacture methamphetamine. Essentially, Movant claims he was in the wrong place at the wrong time, and relies on cases finding that "mere presence" is not enough

to show purpose. *See, e.g., State v. May*, 71 S.W.3d 177 (Mo. App. W.D. 2002) (conviction for possession of a controlled substance with intent to deliver as an accomplice overturned, where the state merely demonstrated the defendant was present in a house in which others possessed marijuana).

Contrary to Defendant's assertion, the evidence indisputably reveals Defendant promoted or aided Eastabrook in the commission of the underlying offense. At trial, Deputy Barbato testified that a bottle labeled "muriatic acid" and large piece of tubing were sitting in plain view in the bed of Defendant's truck, which was parked across the street from Eastabrook's residence. Deputy Barbato further testified that, in his experience investigating methamphetamine-related crimes, "people buy ingredients as a group together, share them, and then someone manufacture it, and after the manufacture of the methamphetamine is done, they'll distribute it out as part of a share."

This evidence—the acid and tubing, Defendant's presence in a methamphetamine lab with a barricaded front door, and Detective Barbato's testimony—is sufficient to demonstrate Defendant had the purpose of furthering the manufacture of methamphetamine. As we do not act as a super juror when reviewing Defendant's claim, we find sufficient evidence exists for a reasonable juror to find beyond a reasonable doubt that Defendant was guilty as an accomplice to the attempted manufacture of methamphetamine. *See Neel*, 81 S.W.3d at 94 (conviction for aiding the manufacture of methamphetamine sustained where the defendant was associated with the scene of the crime and possessed a chemical and other effects used in the manufacturing process); *State v. Rollett*, 80 S.W.3d 514, 522 (Mo. App. W.D. 2002) (evidence sufficient to support defendant's conviction

for aiding in attempt to manufacture meth, where *inter alia*, items used to manufacture meth were found in the defendant's car and defendant's accomplice possessed a "nearly complete methamphetamine lab.") (superseded by statute on other grounds).

Point I is denied.

## Point II—No Abuse of Discretion in Refusing to Enter a Mistrial

In his second point on appeal, Defendant contends the trial court abused its discretion in failing to either grant his request for a mistrial or, alternatively, to instruct the jury to disregard a statement made by Mullinex revealing that Defendant had been in prison during trial. Defendant maintains the State asked Mullinex questions about her communications with Defendant in the months prior to trial, knowing "there was a chance" his imprisonment would be revealed, and when it was revealed, Defendant was irreparably prejudiced. Defendant asserts he was thereby deprived of his right to due process of law and to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, sections 10, 17 and 18(a) of the Missouri Constitution.

### Standard of Review

A mistrial is an extraordinary remedy, reserved for when necessary to avoid a prejudicial effect and maintain an impartial jury. *State v. Goff*, 129 S.W.3d 857, 866 (Mo. banc 2004). The trial court is in the best position to determine any prejudicial effect on the jury. *Id.* The decision to deny a request for a mistrial, as well as to admit evidence at trial, is reviewed for abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008).

### Analysis

The trial court is vested with broad discretion in admitting or excluding evidence. *State v. Pascale*, 386 S.W.3d 777, 779 (Mo. App. E.D. 2011). To be admissible at trial, evidence must be both logically *and* legally relevant. *State v. Blurton*, 484 S.W.3d 758, 777 (Mo. banc 2016). "Logical relevance refers to the tendency to make the existence of a material fact more or less probable." *State v. Brown*, 337 S.W.3d 12, 15 (Mo. banc 2011) (citations omitted). Legal relevance, on the other hand, weighs the probative value versus the risk of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Blurton*, 484 S.W.3d at 777 (quoting *Johnson v. State*, 406 S.W.3d 892, 901 (Mo. banc 2013)).

For instance, evidence of a defendant's other crimes or bad acts may be logically relevant, but are, generally, legally irrelevant when not properly related to the cause on trial; as such, the admission of this evidence can violate a criminal defendant's right to be tried only for the crime with which he is charged. *State v. White*, 230 S.W.3d 375, 378 (Mo. App. S.D. 2007). This principle barring the admission of prior convictions or bad acts is meant to prevent juries from convicting the accused simply because he is perceived to be a "bad or evil man." *Id.*

When legally irrelevant evidence—such as evidence of prior bad acts—is admitted during trial, Missouri courts often apply a five-factor test, to determine the prejudicial effect of an unwarranted reference to other crimes:

(1) whether the statement was, in fact, voluntary and unresponsive to the prose-

cutor's questioning · if · the prosecutor asked the·question or whether the prosecution "deliberately attempted to elicit" the comments;

(2)   whether the statement was singular and isolated, and whether it was emphasized or ·magnified·by the prosecution;

(3)  whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused;

(4)   whether the court promptly sustained defense counsel's objection to the statement and instructed the jury·to disregard the volunteered· statement; and

(5)·  whether in view of the ·other evidence·presented and the strength of the State's case,·it appeared that the ·comment "played a decisive role in the determination of guilt."

See State v. Costa, 11 S.W.3d 670, 677 (Mo. App. W.D. 1999) (citing State v. Silas, 885 S.W.2d· 716, 720 (Mo. App. W.D. 1994)).

In State v. Smith, 934 S.W.2d 318, 319 (Mo. App. W.D. 1996), evidence was adduced during trial indicating that the defendant had previously been arrested for drug possession. After conviction and on appeal, the Missouri Court of Appeals, Western District, undertook an extensive examination of the five factors, finding the first four factors were balanced between the defendant and the State. Id. at 321. In reviewing the fifth factor, despite the Western District finding that the evidence of ·the defendant's guilty was "strong, though not overwhelming[,]" that court nevertheless, affirmed the defendant's conviction, holding "[i]n these circumstances, and considering all of the factors set out above, we cannot say that the single comment by [the witness] played a decisive role in the verdict or that any error in admission of the comment could not have been cured by an instruction to the jury." Id. at 322; see also State v. Lebbing, 114

S.W.3d 877, 881 (Mo. App. S.D.. 2003) (no prejudice found where the state "made no references, prior to [the witness's] cross-examination, to Defendant being in jail and made no·further references during the trial.").

In this matter, at the time of trial, Defendant was incarcerated for a crime unrelated to the current case, did not testify on his own behalf, and the jury was otherwise unaware of his imprisonment. However, during the State's cross-examination of Mullinex, the State inquired, using open-ended questions, as to Mullinex's relationship with Defendant. After the State asked whether the two still talked, Mullinex responded: "No. We don't talk at all really." Thereafter, counsel for Defendant asked to approach the bench, and expressed concern that the State was trying to elicit testimony from Mullinex that Defendant was incarcerated. The State responded that it was merely trying to probe into Mullinex's friendship. When defense counsel again expressed concern that the State was trying to "bring up the fact that he's confined," the State responded "[Defendant was] the one calling the witness. They knew all of these questions were going to be problematic." The court then allowed the State to continue questioning Mullinex.

The State then began probing into the frequency and method of contact between Mullinex and Defendant, continuing to use open-ended questions. Mullinex ·testified she mainly corresponded with Defendant by letter. Defense counsel again asked to approach, and reiterated his concern that the State was attempting elicit testimony concerning Defendant's imprisonment. The State contended it was not doing so, and the court correctly concluded an issue such as whether Defendant "could have said to [Mullinex], 'Come to court and lie for me'" would be relevant. The State agreed to

lead the witness upon returning to cross-examination.

Thereafter, the following exchange occurred:

**The State:** Okay. So you've had correspondence [with Defendant]; is that correct?

**Mullinex:** Yes.

**The State:** Did your correspondence start in January?

**Mullinex:** Whenever—

**The State:** Well, let's try this. When were you subpoenaed for this case to testify?

**Mullinex:** I'm not sure. Sometime in August, I think.

**The State:** Of this year?

**Mullinex:** Yes.

**The State:** Okay. Were you and the Defendant corresponding prior to August?

**Mullinex:** When he was in prison, yes.

At this, Defendant requested a mistrial or alternatively that the jury be instructed to disregard Mullinex's last statement. These requests were overruled. Thereafter, the State moved on to questions concerning the content of Mullinex's letters exchanged with Defendant.

Assuming, *arguendo*, Mullinex's statement constituted evidence of Defendant's prior bad acts, we find the trial court's admission of said evidence was not prejudicial, and the trial court did not err in overruling Defendant's motion for a mistrial. In applying the five factors, *supra*, only the fourth factor favors Defendant. Unlike *Smith*, the State's cross-examination was not conducted to "deliberately" elicit Defendant's imprisonment; rather the State sought to elicit testimony from Mullinex regarding the specifics of the means by which she communicated with Defendant. Further, Mullinex's reference to Defendant's incarceration was singular, isolated, vague, indefinite, and was not magnified by the State. Finally, we find the overwhelming evidence against Defendant for aiding in the attempted manufacture of methamphetamine (as set forth in Point I, *supra*) demonstrates Mullinex's testimony would not have played a "decisive role in the determination of guilt." *See, e.g., Costa*, 11 S.W.3d at 677-78 (the defendant was not prejudiced by the introduction of evidence regarding his prior bad acts because of the overwhelming amount of other evidence in support of the defendant's conviction); *cf. White*, 230 S.W.3d at 379 (the defendant was prejudiced, and a new trial was granted, when the State asked *three different* witnesses specific questions about the defendant's prior bad acts). Thus, the trial court did not abuse its discretion in denying Defendant's request for a mistrial. *Smith*, 934 S.W.2d at 322.

Similarly, as to Defendant's request for a curative instruction, also overruled by the trial court, we find no abuse of discretion. The trial court is in the best position to determine any prejudicial effect on the jury. *Goff*, 129 S.W.3d at 866. Had the trial court called attention to Mullinex's statement, it would have served only to amplify the comment, which was isolated. *See, e.g., State v. Perry*, 275 S.W.3d 237, 248 (Mo. banc 2009) (no error on the trial court's part for failing to instruct the jury to ignore an isolated statement because action by trial court would have drawn attention to the statement). If the trial court had magnified Mullinex's statement by calling attention to it, the more likely a mistrial could have become; a decision by the trial court to avoid this drastic remedy does not shock our sense of justice or indicate a lack of consideration. *See Ward*, 242 S.W.3d at 704.

Point II is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

Roy L. Richter, J., and Philip M. Hess, J., concur.