Angela T. Quigless, J.
*664 David K. Byers ("Defendant") appeals from the judgment of the trial court following a jury trial in which he was convicted of driving while intoxicated. Defendant asserts three points on appeal, arguing: (1) the trial court abused its discretion in denying his motion for a mistrial; (2) the trial court erred or abused its discretion in denying his request to instruct the jury to disregard the State's reference to his prior criminal case; and (3) the trial court erred in admitting evidence obtained in violation of his constitutional right to be free from unreasonable searches and seizures. We affirm the judgment.
Factual and Procedural Background
Defendant does not challenge the sufficiency of the evidence to support the judgment. Viewed in the light most favorable to the jury's verdict, the following evidence was presented at the hearing on the motion to suppress evidence and during the jury trial.
On November 1, 2013, Defendant spent the evening with his girlfriend. First, they went to a friend's birthday party at a restaurant. Around 10:00 p.m., they left the birthday party and went to a different restaurant, where they ate chicken wings and drank some beer. Defendant then left the second restaurant and drove himself and his girlfriend home.
Just before 1:00 a.m., Defendant drove past a police officer who was working on an impaired driving enforcement detail. The officer was aware that there were "at least two beer taverns in the vicinity" that closed around 1:30 a.m. Defendant's vehicle caught the officer's attention because it was "traveling pretty slow" at about thirty miles per hour, which was more than ten miles per hour below the posted speed limit. The officer followed Defendant's vehicle down the two-lane road for about a half mile, during which time the officer observed that Defendant's vehicle "was weaving from left to right, [and] touched the lines on both sides of his travel lane several times." After observing Defendant's vehicle "drift[ing] back and forth several times," the officer decided to stop Defendant and "conduct an investigation to see if he was possibly driving while impaired."
After the officer pulled Defendant over, Defendant immediately got out of his vehicle. When the officer approached Defendant, he observed Defendant's eyes were bloodshot. The officer requested Defendant's driver's license, which he was unable to produce. The officer also detected the odor of an intoxicating beverage on Defendant's breath while speaking to him. When asked if he had been drinking, Defendant told the officer that he had "nothing" to drink. The Defendant agreed to perform the standard field sobriety tests. The officer first conducted the Horizontal Gaze Nystagmus Test.[1] During this test, the officer observed four out of the six possible "clues,"[2] indicating possible intoxication. The officer also conducted the Vertical Gaze Nystagmus Test. This test was also positive, indicating that "whatever depressant is causing [Defendant's] nystagmus is at a high dose in his system." Next, *665 the officer asked Defendant to perform the walk-and-turn test and the one-leg stand test. Defendant informed the officer he could not perform these tests because he had a bad leg. The officer then asked Defendant to recite a portion of the alphabet and count backwards, and Defendant declined. Finally, the officer read Defendant the Missouri's Implied Consent Law, and asked Defendant to submit to chemical breath and urine tests to determine the blood alcohol content in Defendant's system. Defendant declined again. Defendant was then arrested and charged with driving while intoxicated and driving with a revoked license.
Prior to trial, Defendant filed a motion to suppress all of the evidence obtained by the officer following the traffic stop, on the ground that the evidence was obtained in violation of Defendant's constitutional right to be free from unreasonable searches and seizures because the traffic stop was not supported by reasonable suspicion. The trial court held a hearing on the motion to suppress, during which the officer testified to the aforementioned facts. The officer also testified that he had more than eight years of experience as a police officer, and received special training in DWI enforcement and visual detection of impaired driving. During the officer's training, he learned that driving more than ten miles per hour under the posted speed limit, weaving within a lane, and driving late at night in the vicinity of taverns are all indicators of possible impaired driving.
The trial court denied the motion to suppress, finding the officer's testimony was credible and concluding Defendant's rights were not violated because the traffic stop was justified by reasonable suspicion. Defendant filed a motion to reconsider, which was taken with the case. Defendant renewed his objection when the State introduced the evidence at trial. The trial court denied the motion to reconsider and allowed the State to proceed with the evidence.
Also prior to trial, Defendant filed a motion in limine to exclude any reference to his prior criminal convictions, to which the State consented. At trial, Defendant called his girlfriend as a witness. During cross-examination, the State asked the girlfriend whether she recalled testifying as an alibi witness for Defendant in a different case in another division, to which the witness answered "I don't remember."[3] Defendant objected and requested to approach the bench. The trial court held a sidebar outside of the hearing of the jury, during which the court said it would sustain the objection. Defendant moved for a mistrial, and the trial court denied the request. Defendant also requested that the trial court instruct the jury to disregard the State's question, and the court denied that request as well. The proceedings then returned to open court. The court did not sustain Defendant's objection in front of the jury. Neither the State nor Defendant asked the witness any further questions.
After the jury returned guilty verdicts, Defendant filed a motion for a new trial, arguing the trial court erred and abused its discretion in denying his motion to suppress evidence, in denying his motion for a mistrial, and in denying his request to instruct the jury to disregard the State's reference to his girlfriend's testimony as an alibi witness in a different criminal case. The trial court denied the motion. The court stated it denied the motion for a mistrial and the request for a curative instruction because the court believed Defendant had not suffered any prejudice at that point, and the court "did not want to *666 call attention to the fact that [the court] already sustained [Defendant's] objection by striking the question." The trial court sentenced Defendant to five years in prison. This appeal follows.
Discussion
Defendant asserts three points on appeal. In Point I, Defendant argues the trial court abused its discretion in denying his request for a mistrial after the prosecutor insinuated that the defense witness was an alibi witness for Defendant in another criminal case. In Point II, Defendant argues the trial court erred or abused its discretion in failing to instruct the jury to disregard the State's question to Defendant's girlfriend regarding a different court case. In Point III, Defendant argues the trial court erred in denying his motion to suppress, and subsequently admitting, evidence obtained by the arresting officer after the traffic stop, in violation of his constitutional right to be free from unreasonable searches and seizures because the traffic stop was not supported by reasonable suspicion, in that "touching the fog line of a driving lane several times does not alone give an officer reasonable suspicion that criminal activity is afoot."
I. Point One-Refusal to Grant a Mistrial
In Point I, Defendant argues the trial court abused its discretion in denying his request for a mistrial after the State insinuated that the defense witness was an alibi witness for Defendant in another criminal case. We disagree.
The decision to grant or deny a mistrial is within the sound discretion of the trial court. State v. Jones , 921 S.W.2d 28, 32 (Mo. App. W.D. 1996). Granting a mistrial is a drastic remedy that is only warranted in "extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." Id. (quoting State v. Ward , 242 S.W.3d 698, 704 (Mo. banc 2008) ). "The trial court is in a better position to determine the prejudicial effect, if any, of improper evidence and to determine whether any prejudice that results can be ameliorated by less drastic means tha[n] declaring a mistrial." Croxton v. State , 293 S.W.3d 39, 42 (Mo. App. E.D. 2009). We review a trial court's refusal to grant a mistrial only for an abuse of discretion. State v. Meyers , 333 S.W.3d 39, 43 (Mo. App. W.D. 2010). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. Id. On appeal we will only reverse where the error was so prejudicial that it deprived the defendant of a fair trial. Id.
When analyzing the prejudicial effect of an uninvited reference to evidence of a defendant's other crimes, this Court considers five factors:
(1) whether the statement was, in fact, voluntary and unresponsive [to the prosecutor's questioning if the prosecutor asked the question] ... or whether the prosecution "deliberately attempted to elicit" the comments ...; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution, ...; (3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused, ...; (4) whether the court promptly sustained defense counsel's objection to the statement, ... and instructed the jury to disregard the volunteered statement, ...; and (5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment "played a decisive role in the determination of guilt."
*667 State v. Costa , 11 S.W.3d 670, 677 (Mo. App. W.D. 1999) (quoting State v. Smith, 934 S.W.2d 318, 320 (Mo. App. W.D. 1996) ).
The evidence at issue in this case was a question by the State during cross-examination of Defendant's girlfriend, inquiring whether she recalled testifying as an alibi witness for Defendant in a different court case in another division. Defendant objected, arguing this was evidence of his prior conviction and was, therefore, inadmissible. The State argued the fact that the girlfriend had previously testified as an alibi witness for Defendant was relevant to impeach her based on bias. The trial court sustained the objection but denied Defendant's requests for a mistrial and for a curative instruction. The trial court expressly found Defendant had not suffered any prejudice as a result of the State's improper question.
Applying the relevant factors, the record supports that the State deliberately attempted to elicit the testimony at issue and, although the trial court said it would sustain the objection, the trial court neither sustained the objection in front of the jury nor instructed the jury to disregard the testimony. Costa , 11 S.W.3d at 677. Although both of these factors weigh in favor of finding Defendant was prejudiced, three other factors weigh in favor of finding Defendant was not prejudiced. Specifically, this was a "singular and isolated" reference that the State did not "emphasize or magnify;" the State's question was a "vague and indefinite" reference to a different court proceeding that did not specifically refer to the crimes committed; and there is no indication that this question "played a decisive role in the determination of guilt" in light of the other evidence in the case. See id. The evidence at trial included the Defendant's admission that he had at least part of a beer, despite the fact that he told the officer he had "nothing" to drink, and testimony by the officer that Defendant had the odor of an alcoholic beverage on his breath, had blood shot eyes, and failed multiple field sobriety tests.
Under the totality of the circumstances, we find it was within the trial court's discretion to determine this singular, isolated, and vague reference to Defendant's prior court proceeding did not result in prejudice sufficient to warrant a mistrial. "Vague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." State v. Turner , 367 S.W.3d 183, 188 (Mo. App. S.D. 2012) (quoting State v. Norris , 237 S.W.3d 640, 644 (Mo. App. S.D. 2007) ). Accordingly, we find the trial court did not abuse its discretion in denying Defendant's request for a mistrial. Point I is denied.
II. Point Two-Request for a Curative Instruction
In Point II, Defendant argues the trial court erred or abused its discretion in failing to instruct the jury to disregard testimony regarding Defendant's prior court case. We disagree.
We review the trial court's refusal to give a curative instruction for an abuse of discretion. See State v. Russell , 533 S.W.3d 807, 815 (Mo. App. E.D. 2017) (applying abuse of discretion standard of review).[4] A trial court abuses its discretion *668 when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration. Id.
We find the trial court did not abuse its discretion in refusing to instruct the jury to disregard the testimony from Defendant's girlfriend regarding his prior court case. In denying Defendant's motion for a new trial, the court explained its decision not to issue a curative instruction was based on its conclusion that Defendant had not been prejudiced at that point, and the court "did not want to draw attention to the fact that it already sustained [the] objection by striking the question." We cannot say this was an abuse of discretion. See id.
In Russell , this Court found no abuse of discretion where the trial court decided not to issue a curative instruction after sustaining an objection to an improper statement by the State during closing arguments. Id. In reaching this conclusion, this Court reasoned that "[t]he trial court is in the best position to determine any prejudicial effect on the jury" and "[h]ad the trial court called attention to [the prosecutor]'s statement, it would have served only to amplify the comment, which was isolated." Id. The court concluded that there was no abuse of discretion because, "[i]f the trial court had magnified [the prosecutor]'s statement by calling attention to it, the more likely a mistrial would have become[.]" Id. Here, as is Russell , we find that if the trial court called attention to the testimony, it would have served only to amplify a vague and isolated reference to Defendant's prior court case, which may have made the necessity of a mistrial more likely. See id. "[A] decision by the trial court to avoid this drastic remedy does not shock our sense of justice or indicate a lack of consideration." Id.
Accordingly, we find the trial court did not abuse its discretion in refusing to instruct the jury to disregard the testimony concerning Defendant's prior court case. Point II is denied.
III. Point Three-Motion to Suppress Evidence
In Point III, Defendant argues the admission of evidence obtained as a result of the traffic stop violated his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution because the traffic stop constituted a seizure that was not based on reasonable suspicion, arguing "touching the fog line of a driving lane several times does not alone give an officer reasonable suspicion that criminal activity is afoot." We disagree.
When reviewing the trial court's ruling on a motion to suppress evidence, we defer to the trial court's findings of fact and credibility determinations, but we review de novo the legal determination of whether reasonable suspicion existed to make a stop.
*669 State v. Roark , 229 S.W.3d 216, 218 (Mo. App. W.D. 2007). We review the evidence presented both at the suppression hearing and during trial. Id. Our review is limited to whether the trial court ruling is supported by substantial evidence, and it will be reversed only if clearly erroneous. Id. (quoting State v. Edwards , 116 S.W.3d 511, 530 (Mo. banc 2003) ).
The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. Roark , 229 S.W.3d at 222. This right is also protected under Article I, Section 15 of the Missouri Constitution, which is co-extensive with the Fourth Amendment. Id. Generally, a search or seizure must be justified by a warrant based upon probable cause. Id. Courts have recognized exceptions to this general rule, including what is commonly referred to as a " Terry stop." Id. (citing Terry v. Ohio , 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ). "In Terry v. Ohio , the United States Supreme Court held the Fourth Amendment is not offended by a brief investigatory stop by a law enforcement officer who has a reasonable suspicion, based upon specific and articulable facts, that the person stopped is involved in criminal activity." Id. Whether an investigatory stop is justified by reasonable suspicion is reviewed in light of the totality of the circumstances. Id. (citing Alabama v. White , 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ).
When conducting an investigatory stop of a driver suspected of driving while impaired, courts have held that evidence indicating the vehicle "touched the fog line," without more, is insufficient to constitute a reasonable suspicion justifying an investigatory stop for driving under the influence. See State v. Beck , 436 S.W.3d 566, 568-69 (Mo. App. S.D. 2013) ; see also Roark , 229 S.W.3d at 222. However, where an officer observes a vehicle touch the fog line and also observes other factors indicating the driver may be intoxicated, taken together, these factors may constitute a reasonable suspicion sufficient to justify the traffic stop. State v. Brown , 332 S.W.3d 282, 284 (Mo. App. S.D. 2011) (collecting cases).[5]
Here, the arresting officer observed Defendant's vehicle traveling more than ten miles per hour below the posted speed limit, weaving within the lane, and touching the lines on both sides of the lane "several times." The officer observed Defendant's vehicle making these unusual and erratic movements over the course of a half mile. The officer testified that, based on his eight years of experience and specialized training, each of these observations were factors indicating the driver may be intoxicated. This is not a case where the only specific fact the arresting officer was able to articulate was that the defendant's vehicle touched the fog line. Based on the facts and circumstances of this case, we find the officer had reasonable suspicion to justify stopping Defendant and investigating whether he was driving while intoxicated. See id.
Accordingly, we find the trial court did not err in overruling the motion to suppress evidence and admitting the evidence *670 obtained as a result of the traffic stop. Point III is denied.
Conclusion
The judgment of the trial court is affirmed.
Gary M. Gaertner, Jr., P.J., and Robert M. Clayton III, J., concur.

A Gaze Nystagmus Test is designed to detect involuntary twitching of the eyes, which may be caused by a depressant drug, such as alcohol.

"Clues" are specific behaviors that officers look for when conducting field sobriety tests. When an individual exhibits the requisite number of "clues" during a field sobriety test, this is an indication that the individual may be intoxicated.

The witness had previously stated she recalled being present during Defendant's prior case.

The parties disagree as to whether the applicable standard of review is abuse of discretion or de novo , and our review of the case law indicates there is not a clearly-established standard of review for a trial court's refusal to give a curative instruction. See , e.g. , Russell , 533 S.W.3d at 815 (applying abuse of discretion standard of review) ; Thomas v. McKeever's Enters. , 388 S.W.3d 206, 214-15 (Mo. App. W.D. 2012) (applying de novo standard of review). However, we find abuse of discretion is the proper standard of review because this issue is similar to the question of whether the trial court erred in failing to give a withdrawal instruction under MAI 34.02, which is reviewed under the abuse of discretion standard of review. See Trimble v. Pracna , 167 S.W.3d 706, 716 (Mo. banc 2005) ("Whether to give a withdrawal instruction is a matter within the discretion of the trial court."). The MAI recognizes that an oral curative instruction "admonishing the jury to disregard" evidence that has been stricken is similar to, and serves the same purpose as, a withdrawal instruction. See MAI 34.01(A) ("The purpose of a withdrawal instruction may be served by the court sustaining a motion to strike and admonishing the jury to disregard the evidence."). Therefore, it makes sense for this Court to review the failure to give either instruction under the same standard of review.

See , e.g. , Brown , 332 S.W.3d at 284 (reasonable suspicion justified a Terry stop where defendant's vehicle drove on the center line several times without crossing it, vehicle was "weaving within the lane," and no car was next to defendant's vehicle in the adjacent lane); State v. Malaney , 871 S.W.2d 634, 637-38 (Mo. App. S.D. 1994) ("erratic movements" by a vehicle within its lane justify a Terry stop); State v. Huckin , 847 S.W.2d 951, 955 (Mo. App. S.D. 1993) (stating that "unusual operation of the vehicle" and "[w]eaving within the lane of traffic in which the vehicle is traveling" are facts that would "provide[ ] sufficient basis for an investigatory stop of a motor vehicle").